AO 240 (Rev. 6/86)   Application to Proceed @

# United States District Court

CENTRAL __ DISTRICT OF __ ILLINOIS

**JOHN M. WATERS, Clerk**
**U.S. DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

AUG 0 6 2007

UNITED STATES OF AMERICA EX REL.,
DREW TERRELL, pro se,
                    Petitioner,

V.

EDDIE JONES, et al.,

APPLICATION TO PROCEED IN
FORMA PAUPERIS, SUPPORTING
DOCUMENTATION AND ORDER

CASE NUMBER: 07-1208

---

I, __DREW TERRELL__ , declare that I am the *(check appropriate box)*

☒ petitioner/plaintiff          ☐ movant (filing 28 U.S.C. 2255 motion)

☐ respondent/defendant          ☐ _____
                                          *other*

in the above-entitled proceeding; that, in support of my request to proceed without being required to prepay fees, cost or give security therefor, I state that because of my poverty, I am unable to pay the costs of said proceeding or give security therefor; that I believe I am entitled to relief. The nature of my action, defense, or other proceeding or the issues I intend to present on appeal are briefly stated as follows:

In further support of this application, I answer the following questions.

1. Are you presently employed?                              Yes ☐    No ☒
   a. If the answer is "yes," state the amount of your salary or wages per month, and give the name and address of your employer. (list both gross and net salary)

   b. If the answer is "no," state the date of last employment and the amount of the salary and wages per month which you received.

2. Have you received within the past twelve months any money from any of the following sources?
   | | | |
   |---|---|---|
   | a. Business, profession or other form of self-employment | Yes ☐ | No ☒ |
   | b. Rent payments, interest or dividends? | Yes ☐ | No ☒ |
   | c. Pensions, annuities or life insurance payments? | Yes ☐ | No ☒ |
   | d. Gifts or inheritances? | Yes ☐ | No ☐ |
   | e. Any other sources? | Yes ☐ | No ☐ |

If the answer to any of the above is "yes," describe each source of money and state the amount received from each during the past twelve months.

3. Do you own any cash, or do you have money in checking or savings accounts?
   Yes ☒    No ☐    (Include any funds in prison accounts.)
   If the answer is "yes," state the total value of the items owned.

4. Do you own or have any interest in any real estate, stocks, bonds, notes, automobiles or other valuable property (excluding ordinary household furnishings and clothing)?
   Yes ☐    No ☒
   If the answer is "yes," describe the property and state its approximate value.

5. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 7-30-2007
(Date)

_____
Signature of Applicant

## CERTIFICATE
(Prisoner Accounts Only)

I certify that the applicant named herein has the sum of $ •40 on account to his credit at the Tinican Clark Center institution where he is confined. I further certify that the applicant likewise has the following securities to his credit according to the records of said institution: _____

I further certify that during the last six months the applicant's average balance was $ 130.11

_____
Authorized Officer of Institution

## ORDER OF COURT

| The application is hereby denied | The application is hereby granted. Let the applicant proceed without prepayment of cost or fees or the necessity of giving security therefor. |
|---|---|
| _____    _____<br>United States Judge          Date | _____    _____<br>United States Judge          Date<br>or Magistrate |

**Trust Fund**

d_list_inmate_trans_statement_composite

**Inmate Transaction Statement**

REPORT CRITERIA - Date: 01/30/2007 thru End;     Inmate: N63220;     Active Status Only ? : No;     Print Restrictions ? : Yes;
Transaction Type: All Transaction Types;     Print Furloughs / Restitutions ? : Yes;     Include Inmate Totals ? : Yes;     Print
Balance Errors Only ? : No

**Inmate: N63220 Terrell, Drew**                    **Housing Unit: PON-SP-05-28**

| Date | Source | Transaction Type | Batch | Reference # | Description | Amount | Balance |
|------|--------|------------------|-------|-------------|-------------|--------|---------|
| | | | | | **Beginning Balance:** | | 15.64 |
| 02/02/07 | Mail Room | 01 MO/Checks (Not Held) | 033262 | 2070302656 | Terrell, Madelin | 20.00 | 35.64 |
| 02/02/07 | Mail Room | 01 MO/Checks (Not Held) | 033262 | 446064905 | Snyder, Olaf | 27.27 | 62.91 |
| 02/06/07 | Point of Sale | 60 Commissary | 037703 | 235706 | Commissary | -59.67 | 3.24 |
| 02/06/07 | Mail Room | 01 MO/Checks (Not Held) | 037262 | 2070302393 | Terrell, Madeline | 20.00 | 23.24 |
| 02/15/07 | Point of Sale | 60 Commissary | 046731 | 236251 | Commissary | -19.09 | 4.15 |
| 02/15/07 | Payroll | 20 Payroll Adjustment | 046120 | | P/R month of 01/2007 | 10.00 | 14.15 |
| 02/15/07 | Disbursements | 90 Medical Co-Pay | 046320 | Chk #61998 | 497994, DOC: 523 Fund Reimburs, Inv. Date: 01/26/2007 | -2.00 | 12.15 |
| 02/15/07 | Disbursements | 80 Postage | 046320 | Chk #61999 | 498796, Pitney Bowes Bank, Inc, Inv. Date: 02/05/2007 | -.45 | 11.70 |
| 02/15/07 | Disbursements | 80 Postage | 046320 | Chk #61999 | 497306, Pitney Bowes Bank, Inc, Inv. Date: 01/19/2007 | -.24 | 11.46 |
| 02/20/07 | Mail Room | 01 MO/Checks (Not Held) | 051262 | P028614 | Terrell, Drew | 50.00 | 61.46 |
| 02/21/07 | Point of Sale | 60 Commissary | 052731 | 236940 | Commissary | -56.33 | 5.13 |
| 02/21/07 | Mail Room | 01 MO/Checks (Not Held) | 052262 | 446064904 | Snyder, Olaf | 25.00 | 30.13 |
| 02/23/07 | Mail Room | 01 MO/Checks (Not Held) | 054262 | 2070304513 | Terrell, Madeline | 20.00 | 50.13 |
| 02/26/07 | Point of Sale | 60 Commissary | 057774 | 237361 | Commissary | -49.44 | .69 |
| 02/28/07 | Mail Room | 01 MO/Checks (Not Held) | 059262 | 2070304947 | Terrell, Madeline | 20.00 | 20.69 |
| 03/05/07 | Point of Sale | 60 Commissary | 064731 | 237788 | Commissary | -10.76 | 9.93 |
| 03/08/07 | Payroll | 20 Payroll Adjustment | 067120 | | P/R month of 02/2007 | 9.52 | 19.45 |
| 03/14/07 | Point of Sale | 60 Commissary | 073703 | 238981 | Commissary | -17.20 | 2.25 |
| 03/15/07 | Disbursements | 80 Postage | 074320 | Chk #62244 | 500640, Pitney Bowes Bank, Inc, Inv. Date: 02/26/2007 | -.45 | 1.80 |
| 03/21/07 | Mail Room | 01 MO/Checks (Not Held) | 080225 | 2070307978 | Terrell, Madiline | 20.00 | 21.80 |
| 03/26/07 | Point of Sale | 60 Commissary | 085703 | 239791 | Commissary | -19.42 | 2.38 |
| 03/29/07 | Mail Room | 01 MO/Checks (Not Held) | 088262 | 2070308380 | Terrell, Madeline | 20.00 | 22.38 |
| 03/29/07 | Mail Room | 01 MO/Checks (Not Held) | 088262 | 56936864897 | Terrell, Gail | 25.00 | 47.38 |
| 03/30/07 | Mail Room | 01 MO/Checks (Not Held) | 089225 | 446064961 | Snyder, Olaf | 23.82 | 71.20 |
| 04/02/07 | Point of Sale | 60 Commissary | 092731 | 240247 | Commissary | -64.24 | 6.96 |
| 04/06/07 | Payroll | 20 Payroll Adjustment | 096118 | | P/R month of 03/2007 | 10.00 | 16.96 |
| 04/09/07 | Mail Room | 01 MO/Checks (Not Held) | 099262 | 2070310388 | Terrell, M J | 15.00 | 31.96 |
| 04/11/07 | Point of Sale | 60 Commissary | 101703 | 241250 | Commissary | -26.11 | 5.85 |
| 04/12/07 | Mail Room | 01 MO/Checks (Not Held) | 102225 | 561429904752 | Terrell, Drew III | 30.00 | 35.85 |
| 04/16/07 | Disbursements | 84 Library | 106318 | Chk #62833 | 504836, DOC: Library Copies,     Inv. Date: 04/12/2007 | -.25 | 35.60 |
| 04/16/07 | Disbursements | 80 Postage | 106318 | Chk #62835 | 502666, Pitney Bowes Bank, Inc, Inv. Date: 03/19/2007 | -.45 | 35.15 |
| 04/17/07 | Point of Sale | 60 Commissary | 107731 | 241704 | Commissary | -33.01 | 2.14 |
| 04/30/07 | Mail Room | 01 MO/Checks (Not Held) | 120225 | 93077915758 | Stevens, Phyllis | 25.00 | 27.14 |
| 05/07/07 | Point of Sale | 60 Commissary | 127731 | 243129 | Commissary | -20.55 | 6.59 |
| 05/10/07 | Payroll | 20 Payroll Adjustment | 130118 | | P/R month of 04/2007 | 10.00 | 16.59 |
| 05/15/07 | Point of Sale | 60 Commissary | 135731 | 243760 | Commissary | -12.29 | 4.30 |
| 05/15/07 | Mail Room | 01 MO/Checks (Not Held) | 135262 | 2070313271 | Terrell, Madeline | 50.00 | 54.30 |
| 05/15/07 | Mail Room | 01 MO/Checks (Not Held) | 135262 | 2070313272 | Terrell, Madeline | 50.00 | 104.30 |
| 05/16/07 | Disbursements | 84 Library | 136320 | Chk #63150 | 505897, DOC - Library Copies,     Inv. Date: 04/25/2007 | -.10 | 104.20 |
| 05/16/07 | Disbursements | 84 Library | 136320 | Chk #63150 | 506384, DOC - Library Copies,     Inv. Date: 05/01/2007 | -.30 | 103.90 |
| 05/16/07 | Disbursements | 80 Postage | 136320 | Chk #63152 | 507863, Pitney Bowes Bank, Inc, Inv. Date: 05/14/2007 | -.19 | 103.71 |
| 05/16/07 | Disbursements | 80 Postage | 136320 | Chk #63152 | 507059, Pitney Bowes Bank, Inc, Inv. Date: 05/07/2007 | -.45 | 103.26 |

REPORT CRITERIA  -  Date: 01/30/2007 thru End;      Inmate: N63220;      Active Status Only ? : No;    Print Restrictions ? : Yes;
Transaction Type: All Transaction Types;      Print Furloughs / Restitutions ? : Yes;      Include Inmate Totals ? : Yes;      Print
Balance Errors Only ? : No

**Inmate: N63220 Terrell, Drew**                             **Housing Unit: PON-SP-05-28**

| Date | Source | Transaction Type | Batch | Reference # | Description | Amount | Balance |
|------|--------|------------------|-------|-------------|-------------|--------|---------|
| 05/16/07 | Disbursements | 80 Postage | 136320 | Chk #63152 | 506464, Pitney Bowes Bank, Inc, Inv. Date: 05/01/2007 | -.45 | 102.81 |
| 05/16/07 | Disbursements | 80 Postage | 136320 | Chk #63152 | 505612, Pitney Bowes Bank, Inc, Inv. Date: 04/20/2007 | -.45 | 102.36 |
| 05/16/07 | Disbursements | 80 Postage | 136320 | Chk #63152 | 505745, Pitney Bowes Bank, Inc, Inv. Date: 04/23/2007 | -1.25 | 101.11 |
| 05/21/07 | Point of Sale | 60 Commissary | 141731 | 244356 | Commissary | -47.84 | 53.27 |
| 05/30/07 | Point of Sale | 60 Commissary | 150731 | 245150 | Commissary | -26.09 | 27.18 |
| 06/05/07 | Point of Sale | 60 Commissary | 156731 | 245423 | Commissary | -8.83 | 18.35 |
| 06/07/07 | Payroll | 20 Payroll Adjustment | 158120 | | P/R month of 05/2007 | 10.00 | 28.35 |
| 06/08/07 | Mail Room | 01 MO/Checks (Not Held) | 159225 | 2070316275 | Terrell, Madeline | 50.00 | 78.35 |
| 06/08/07 | Mail Room | 01 MO/Checks (Not Held) | 159225 | 2070316276 | Terrell, Madeline | 50.00 | 128.35 |
| 06/11/07 | Point of Sale | 60 Commissary | 162703 | 245963 | Commissary | 5.65 | 134.00 |
| 06/14/07 | Disbursements | 90 Medical Co-Pay | 165320 | Chk #63452 | 509908, DOC: 523 Fund Reimburs, Inv. Date: 06/08/2007 | -2.00 | 132.00 |
| 06/14/07 | Disbursements | 80 Postage | 165320 | Chk #63453 | 509482, Pitney Bowes Bank, Inc, Inv. Date: 06/04/2007 | -.49 | 131.51 |
| 06/14/07 | Disbursements | 80 Postage | 165320 | Chk #63453 | 509042, Pitney Bowes Bank, Inc, Inv. Date: 05/29/2007 | -.19 | 131.32 |
| 06/14/07 | Disbursements | 80 Postage | 165320 | Chk #63453 | 509576, Pitney Bowes Bank, Inc, Inv. Date: 06/05/2007 | -.51 | 130.81 |
| 06/14/07 | Disbursements | 80 Postage | 165320 | Chk #63453 | 510102, Pitney Bowes Bank, Inc, Inv. Date: 06/11/2007 | -.49 | 130.32 |
| 06/14/07 | Disbursements | 80 Postage | 165320 | Chk #63453 | 508312, Pitney Bowes Bank, Inc, Inv. Date: 05/18/2007 | -.14 | 130.18 |
| 06/14/07 | Disbursements | 80 Postage | 165320 | Chk #63453 | 508258, Pitney Bowes Bank, Inc, Inv. Date: 05/17/2007 | -.51 | 129.67 |
| 06/14/07 | Disbursements | 80 Postage | 165320 | Chk #63453 | 408488, Pitney Bowes Bank, Inc, Inv. Date: 05/21/2007 | -.19 | 129.48 |
| 06/14/07 | Disbursements | 80 Postage | 165320 | Chk #63453 | 510422, Pitney Bowes Bank, Inc, Inv. Date: 06/13/2007 | -.17 | 129.31 |
| 06/18/07 | Point of Sale | 60 Commissary | 169703 | 246659 | Commissary | -127.86 | 1.45 |
| 06/20/07 | Mail Room | 01 MO/Checks (Not Held) | 171262 | P038092 | Terrell, III, Drew | 50.00 | 51.45 |
| 06/25/07 | Point of Sale | 60 Commissary | 176767 | 247232 | Commissary | -47.38 | 4.07 |
| 06/26/07 | Mail Room | 01 MO/Checks (Not Held) | 177262 | 446065010 | Snyder, Olaf | 30.00 | 34.07 |
| 07/02/07 | Point of Sale | 60 Commissary | 183731 | 247661 | Commissary | -24.75 | 9.32 |
| 07/02/07 | Point of Sale | 60 Commissary | 183703 | 247680 | Commissary | -.06 | 9.26 |
| 07/09/07 | Point of Sale | 60 Commissary | 190703 | 248178 | Commissary | -5.26 | 4.00 |
| 07/13/07 | Payroll | 20 Payroll Adjustment | 194120 | | P/R month of 06/2007 | 10.00 | 14.00 |
| 07/13/07 | Disbursements | 84 Library | 194320 | Chk #63671 | 511936, DOC: Library Copies, Inv. Date: 07/03/2007 | -.15 | 13.85 |
| 07/13/07 | Disbursements | 84 Library | 194320 | Chk #63671 | 512078, DOC: Library Copies, Inv. Date: 07/05/2007 | -.30 | 13.55 |
| 07/13/07 | Disbursements | 84 Library | 194320 | Chk #63671 | 511937, DOC: Library Copies, Inv. Date: 07/03/2007 | -.50 | 13.05 |
| 07/13/07 | Disbursements | 84 Library | 194320 | Chk #63671 | 512254, DOC: Library Copies, Inv. Date: 07/09/2007 | -.30 | 12.75 |
| 07/13/07 | Disbursements | 84 Library | 194320 | Chk #63671 | 511941, DOC: Library Copies, Inv. Date: 07/03/2007 | -.35 | 12.40 |
| 07/13/07 | Disbursements | 80 Postage | 194320 | Chk #63713 | 511995, Pitney Bowes Bank, Inc, Inv. Date: 07/03/2007 | -.49 | 11.91 |
| 07/13/07 | Disbursements | 80 Postage | 194320 | Chk #63713 | 512379, Pitney Bowes Bank, Inc, Inv. Date: 07/09/2007 | -.49 | 11.42 |
| 07/13/07 | Disbursements | 80 Postage | 194320 | Chk #63713 | 511321, Pitney Bowes Bank, Inc, Inv. Date: 06/25/2007 | -.49 | 10.93 |

REPORT CRITERIA  -  Date: 01/30/2007 thru End;    Inmate: N63220;    Active Status Only ? : No;    Print Restrictions ? : Yes;    Transaction Type: All Transaction Types;    Print Furloughs / Restitutions ? : Yes;    Include Inmate Totals ? : Yes;    Print Balance Errors Only ? : No

**Inmate: N63220 Terrell, Drew**                    **Housing Unit: PON-SP-05-28**

| Date | Source | Transaction Type | Batch | Reference # | Description | Amount | Balance |
|------|--------|------------------|-------|-------------|-------------|--------|---------|
| 07/13/07 | Mail Room | 01 MO/Checks (Not Held) | 194262 | 2070319305 | Terrell, Madeline | 50.00 | 60.93 |
| 07/18/07 | Point of Sale | 60 Commissary | 199703 | 248996 | Commissary | -54.51 | 6.42 |
| 07/24/07 | Mail Room | 01 MO/Checks (Not Held) | 205262 | 2070319840 | Terrell, Madeline | 50.00 | 56.42 |
| 07/25/07 | Point of Sale | 60 Commissary | 206731 | 249615 | Commissary | -52.34 | 4.08 |

| | |
|---|---|
| **Total Inmate Funds:** | 4.08 |
| **Less Funds Held For Orders:** | .00 |
| **Less Funds Restricted:** | 3.68 |
| **Funds Available:** | .40 |
| **Total Furloughs:** | .00 |
| **Total Voluntary Restitutions:** | .00 |

**RESTRICTIONS**

| Invoice Date | Invoice Number | Type | Description | Vendor | Amount |
|--------------|----------------|------|-------------|--------|--------|
| 07/17/2007 | 512990 | Disb | Library | 2 DOC: 523 Fund Library | $2.10 |
| 07/18/2007 | 513148 | Disb | Postage | 6967 Pitney Bowes Bank, Inc. | $0.49 |
| 07/23/2007 | 513555 | Disb | Postage | 6967 Pitney Bowes Bank, Inc. | $0.49 |
| 07/24/2007 | 513657 | Disb | Library | 2 DOC: 523 Fund Library | $0.60 |
| | | | | **Total Restrictions:** | **$3.68** |



FILED
E-FILED
Tuesday, 07 August, 2007 11:54:45 AM
Clerk, U.S. District Court, ILCD

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
AUG 6 2007

AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| **United States District Court** | District | CENTRAL DISTRICT OF ILLINOIS |
|---|---|---|

| Name DREW TERRELL | Prisoner No. N63220 | Case No. 07-1208 |
|---|---|---|

| Place of Confinement |
|---|
| PONTIAC CORRECTIONAL CENTER<br>700 W. LINCOLN AVE.,/P.O. BOX 99,<br>PONTIAC, ILLINOIS 61764 |

| Name of Petitioner (include name under which convicted)<br>UNITED STATES OF AMERICA EX REL.,<br>DREW TERRELL, pro se, | v. | Name of Respondent (authorized person having custody of petitioner)<br>WARDEN EDDIE JONES, Chief Administrative Officer of Pontiac Correctional Center, |
|---|---|---|

| The Attorney General of the State of: ILLINOIS, LISA MADIGAN. |
|---|

## PETITION

1. Name and location of court which entered the judgment of conviction under attack  The First Judicial Circuit Court of Cook County, at 2600 So. California Ave., Chicago, Illinois 60608.

2. Date of judgment of conviction  August 28, 1986.

3. Length of sentence  Commuted Death Sentence to Natural Life by former Gov. Ryan

4. Nature of offense involved (all counts)  Forcable Felony Murder predicated on various offenses but, general scheme is Forcable Felony Murder based on the underlying felony of aggravated criminal sexual assault and aggravated battery.

5. What was your plea? (Check one)
   (a) Not guilty  ☒
   (b) Guilty  ☐
   (c) Nolo contendere  ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury  ☐
   (b) Judge only  ☒

7. Did you testify at the trial?
   Yes ☒ No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐

SCANNED at PCC and E-Mailed
8-6-07 (date) by SE (initials)
106 (# of pages)

(2)

AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

  (a) Name of court  ILLINOIS SUPREME COURT

  (b) Result  affirmed convictions but vacated his sentence.

  (c) Date of result and citation, if known  People v. Terrell, 132 Ill.2d 178, 547 N.E.2d 145
      (1989) cert. denied 493 U.S. 959, 110 S.Ct. 2567, 109 L.Ed.2d 749 (1990)
  (d) Grounds raised  involuntariness of statements; reasonable doubt; insufficiency of

      evidence; and several constitutional challenges to the statutes.

  (e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

    (1) Name of court  ILLINOIS AND UNITED STATES SUPREME COURTS

    (2) Result  On appeal, the Illinois Supreme Court affirmed, and the United States

    Supreme Court denied cert..

    (3) Date of result and citation, if known  People v. Terrell, 185 Ill.2d 467, 708 N.E.2d 309,
        (1998), cert. denied 528 U.S. 881, 120 S.Ct. 194, 145 L.Ed.2d 163 (1999)
    (4) Grounds raised  whether a capital defendant has a right to present evidence and

    argue in mitigation that death should not be imposed if sentencing jurors has
    a residual or lingering doubt of guilt(?)

  (f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to
  each direct appeal:

    (1) Name of court  Petitioner restates subparagraph (e) of paragraph 9, as though
        fully incorporated herein.
    (2) Result

    (3) Date of result and citation, if known

    (4) Grounds raised


10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions,
applications, or motions with respect to this judgment in any court, state or federal?
Yes ☒ No ☐

11. If your answer to 10 was "yes," give the following information:

  (a) (1) Name of court  the First Judicial Circuit Court of Cook county.

    (2) Nature of proceeding  collateral review, by and through, a timely post-conviction

      petition on the date of May 16, 1997.

    (3) Grounds raised  Actual Innocence; Ineffective Assistance of Counsel; and a

      Denial of the fundamental right to a fair trial based on matters outside

AO 241 (Rev. 5/85)

the record, namely, Affidavits.

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐   No ☒

(5) Result  Entry of judgment on the pleading granting State's motion to dismiss responsively raising an issue of credibility.

(6) Date of result  On June 29, 2004.

(b) As to any second petition, application or motion give the same information:

(1) Name of court  the First District Court of Appeal of the State of Illinois

(2) Nature of proceeding  an appeal, styled as: People v. Drew Terrell, said being cause no. 1-04-2266 (July 26, 2006)

(3) Grounds raised  Circuit Court erred in dismissing without an evidentiary hearing Petitioner's ineffective assistance counsel for failing to full investi- evidence provided to him suggesting that Petitioner confessed falsely under duress and influence of the actual murderer, his mother.

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐   No ☒

(5) Result  —same—

(6) Date of result  —same—

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

(1) First petition, etc.        Yes ☒   No ☐
(2) Second petition, etc.      Yes ☐   No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

A.    Ground one: <u>PETITIONER CLAIMS THAT THE STATE COURT'S DECISION IS BASED ON AN</u>

<u>UNREASONABLE DETERMINATION OF FACTS</u>

Supporting FACTS (state briefly without citing cases or law): <u>BECAUSE THE</u>

<u>STATE COURT MADE AN EVIDENTIARY FINDING AND JUDGMENT ON THE PLEADINGS WITH-</u>

<u>OUT HOLDING A HEARING AND GIVING HIM AN OPPORTUNITY TO PRESENT EVIDENCE, IN</u>

<u>PARTICULAR, WHERE HIS MAY 16, 1997 PETITION AND AMENDMENT THEREOF ALLEGING,</u>

<u>INTER ALIA, ACTUAL INNOCENCE, INEFFECTIVE ASSISTANCE OF COUNSEL SUPPORTED</u>

<u>BY, INTER ALIA, THE AFFIDAVIT OF NAPOLEAN WELLS ATTESTING TO THE FACT THAT</u>

<u>HIS SISTER CONFESSED TO HIM THAT SHE COMMITTED THE CRIMES FOR WHICH PETITI-</u>

<u>TIONER WAS CONVICTED OF, HOWEVER, ON JUNE 29, 2004, SAID COURT GRANTED THE</u>

<u>STATE'S MOTION TO DISMISS CLAIMING THAT SAID AFFIDAVITS WERE INCREDIBLE,</u>

<u>WITHOUT A FULL AND FAIR HEARING FOR LIVE TESTIMONY TO DEVELOP AN ADEQUATE</u>

<u>RECORD; AND WHERE THE STATE REVIEWING COURTS DENIED HIM CORRECTIVE PROCESS</u>

<u>FOR THE SAME;</u>

B.    Ground two: <u>PETITIONER CLAIMS THAT THE STATE COURT'S DECISION IS CONTRARY TO</u>

<u>CLEARLY ESTABLISHED FEDERAL LAW AS DETERMINED BY THE SUPREME COURT (q.v.)</u>

Supporting FACTS (state briefly without citing cases or law): <u>BECAUSE ON</u>

<u>JULY 26, 2006 THE STATE REVIEWING COURT ARRIVED AT A CONCLUSION ON A QUEST-</u>

<u>ION OF LAW OPPOSITE TO THAT REACHED BY THE UNITED STATES SUPREME COURT IN</u>

<u>DETERMINING IF HE MADE A SUBSTANTIAL SHOWING TO SUPPORT HIS CLAIM OF INEFF-</u>

<u>ECTIVE ASSISTANCE COUNSEL CLAIM FOR FAILURE TO INVESTIGATE AND PRESENT IN-</u>

<u>FORMATION THAT WAS READILY AVAILABLE, IN PARTICULAR, WHERE HIS PREOFFER IN-</u>

<u>VOLVED AFFIDAVITS INDICATING SOMEONE OTHER THEN PETITIONER COMMITTED THE</u>

<u>CRIMES FOR WHICH HE WAS CONVICTED OF CREATED A FACTUAL DISPUTE REGARDING</u>

<u>COUNSEL'S KNOWLEDGE, ACTS AND/OR OMISSIONS IN LIGHT OF THESE ATTESTED FACTS,</u>

HOWEVER, SAID COURT AFFIRMED THE STATE COURT'S JUNE 29, 2004 GRANT OF THE STATE'S MOTION TO DISMISS RAISING A CREDIBILITY ISSUE, AND ENTRY OF JUDGMENT ON THE PLEADINGS WITHOUT HOLDING AN EVIDENTIARY HEARING, DESPITE BEING FULLY BRIEFED ON THE LEGAL CONCLUSION REACHED BY THE SUPREME COURT; AND WHERE THE STATE HIGHEST COURT DENIED HIM CORRECTIVE PROCESS FOR THE SAME;

C. Ground three: PETITIONER CLAIMS THAT THE STATE COURT'S DECISION INVOLVES AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW (q.v.)

Supporting FACTS (state briefly without citing cases or law): BECAUSE THE STATE REVIEWING COURT UNREASONABLY EXTENDED THE CORRECT LEGAL PRINCIPLE TO A NEW CONTEXT THAT SHOULD NOT APPLY, IN PARTICULAR, WHERE SAID COURT EXPRE- SSLY APPLIED A DE NOVO STANDARD OF REVIEW TO THE TRIAL COURT'S JUNE 29, 2004 JUDGMENT ON THE PLEADINGS, YET LIMITED THE SCOPE AND EXTENT OF SUCH REVIEW TO EXCLUDE SIGNIFICANT PORTIONS OF THE SUBSTANCE OF SAID PLEADINGS, NAMELY, INTER ALIA, FAILURE TO PRESENT READILY AVAILABLE INFORMATION AT TRIAL WHICH WAS CENTRAL TO HIS INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM, HOWEVER, ON JULY 26, 2006 UNDER SUCH NARROW REVIEW, SAID COURT AFFIRMED THE TRIAL COURT'S JUNE 29, 2004 GRANT OF STATE'S MOTION TO DISMISS AND JUDGMENT ON THE PLEAD- INGS WITHOUT HOLDING A FULL AND FAIR HEARING; AND WHERE THE STATE HIGHEST COURT DENIED HIM CORRECTIVE PROCESS FOR THE SAME;

D. Ground four: PETITIONER CLAIMS THAT THE STATE COURT'S DECISION IS BASED ON AN UNREASONABLE DETERMINATION OF FACTS

Supporting FACTS (state briefly without citing cases or law): BECAUSE BOTH STATE TRIAL AND REVIEWING COURTS HAD BEFORE IT, YET APPARENTLY IGNORED EVI- DENCE THAT SUPPORTS HIS OVERLAPPING CLAIMS THAT DUE TO HIS TRIAL COUNSEL'S INEFFECTIVE FOR FAILURE TO PRESENT READILY AVAILABLE INFORMATION SHOWING HE WAS ACTUALLY INNOCENCE AND HIS CONFESSION WAS FALSE RENDERED SUCH FACTUAL BASIS IN EFFECT UNAVAILABLE, AND HIS TRIAL FUNDAMENTALLY UNFAIR, IN PARTICU- LAR, WHERE HE PROVIDED SEVERAL AFFIDAVITS, NAMELY, THAT OF NAPOLEAN WELLS ATTESTATION TO THE FACT THAT HIS SISTER HAD CONFESSED TO HIM THAT SHE HAD COMMITTED THE CRIMES FOR WHICH PETITIONER WAS CONVICTED OF, HOWEVER, DESPITE

STRONG EXONERATIVE AND PROBATIVE VALUE OF SUCH EVIDENCE, THE TRIAL COURT GRANT-
ED THE STATE'S MOTION TO DISMISS RAISING AN ISSUE OF CREDIBILITY WHICH WAS NON-
COGNIZABLE UNDER SAID MOTION, AND ENTERED JUDGMENT ON THE PLEADINGS ON JUNE 29,
2004 WITHOUT AN EVIDENTIARY HEARING, AND WHERE THE REVIEWING COURT UNDER THE
GUISE OF A DE NOVO STANDARD ENTERED ITS OWN FINDING OF INCREDIBILITY WITHOUT
A DEVELOPED RECORD CONTAINING LIVE TESTIMONY OF THE AFFIANTS, AND WHERE THE STATE
HIGHEST COURT DENIED HIM CORRECTIVE PROCESS FOR THE SAME;

AO 241 (Rev. 5/85)

E. Ground five: PETITIONER CLAIMS THAT THE STATE COURT'S DECISION IS BASED ON AN
UNREASONABLE DETERMINATION OF FACTS

Supporting FACTS (state *briefly* without citing cases or law): BECAUSE THE STATE REVIEWING COURT
MISSTATED THE RECORD ON A MATERIAL FACTUAL ISSUE CENTRAL TO HIS CLAIM COUNSEL'S
INEFFECTIVENESS FOR FAILING TO INVESTIGATE OR PRESENT READILY AVAILABLE INFORM-
ATION, NAMELY, INTER ALIA, THAT OF LOTTI BANKS, SPECIFICALLY AT TRIAL, HOWEVER,
SAID COURT IN ITS JULY 26, 2006 RECITAL AND RENDITION HELD THAT LOTTI BANKS
AFFIDAVIT CLAIMING THAT SHE WAS NEVER ASKED TO TESTIFY WAS POSITIVE REBUTTED

D. Ground six: (CONTINUE OF GROUND FIVE)
BY HER TESTIMONY AT THE PETITIONER SENTENCING HEARING, YET MATERIALLY OMITTED

Supporting FACTS (state *briefly* without citing cases or law): THAT LOTTI BANKS EXPRESSLY REFERRED
TO "AT TRIAL" AND THEREBY EXCLUDING ANY SENTENCING STAGE, UNDER SUCH MISAPPRE-
HENSION, SAID COURT AFFIRMED THE TRIAL COURT'S PREVIOUS RULING, AND WHERE
HE WAS DENIED CORRECTIVE PROCESS BY THE STATE HIGHEST COURT FOR THE SAME;
BECAUSE SUCH FACT, HIS CUSTODY IS UNLAWFUL UNDER THE FOURTEENTH AMENDMENT
AND BY THE LAWS OF HABEAS CORPUS. ACCORDINGLY, HE AFFIRMATIVE ASSERTS HIS
INHERENT INTEREST TO LIBERTY AGAINST SUCH UNLAWFUL RESTRAINTS AND PROCESS.

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

_____

_____

_____

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐  No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing  Attorney William O'Neal, 16501 S. Kedzie Pkwy, Markham, Illi-
nois.

(b) At arraignment and plea  Atty. William O'Neal

_____

AO 241 (Rev. 5/85)

(c) At trial  Atty. William O'Neal

(d) At sentencing  Atty. William O'Neal

(e) On appeal  Charles M. Schiedel and Peter L. Rotskoff, 300 E. Monroe, Springfield, Illinois 62701 (Assistant State Appellate Defenders under appointment)

(f) In any post-conviction proceeding  ALAN M. FREEMAN, and CAROL HEISE, 22 W. Monroe, Chicago, Illinois 60603 (Assistant State Appellate Defenders under appointment)

(g) On appeal from any adverse ruling in a post-conviction proceeding  Joshua Sachs, 20 N. Clark St., Chicago, Illinois 60602 (Assistant State Appellate Defender under appointment)

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☒  No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐  No ☒
(a) If so, give name and location of court which imposed sentence to be served in the future: _____

(b) Give date and length of the above sentence:_____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐  No ☐

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

PRO SE LITIGANT
_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

7-30-2007
(date)

_____
Signature of Petitioner

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

**FILED**

AUG – 6 2007

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL., ) | |
|   DREW TERRELL, <u>pro se</u>, ) | |
|             Petitioner, ) | |
| ) | |
|    -vs- ) | Case No. ___07-12 08___ |
| ) | |
| <u>EDDIE JONES</u>, Warden of Pontiac ) | |
| Correctional Center, ) | Case Number of the State Court |
| and ) | Conviction: |
|   <u>LISA MADIGAN</u>, Attorney General ) | 85 Cr 10757 |
| of the State of Illinois, ) | |
|         Respondent(s). ) | |
| ) | |

### PRO SE MEMORANDA OF LAW

**NOW COMES** Petitioner Drew Terrell, pro se (hereinafter, the "Petitioner"
or "Mr. Terrell"), and respectfully submits the following "PRO SE MEMORANDA
OF LAW" in support of his "PETITION" for habeas corpus relief filed simultaneous-
ly herewith. In support thereof, Petitioner submits the following:

**INTRODUCTION**

    Petitioner asserts five arguments in support of his entitlement to an evid-
entiary hearing on his "PETITION" for habeas corpus relief, which are:

       1) The state court's decision is based on an unreasonable determination
of facts in light of the evidence presented in the state proceeding because
the state court made an evidentiary finding and judgment on the pleading
without holding a hearing and giving him an opportunity to present evidence,
in particular, where his May 16, 1997 petition and amendment thereof alleg-
ing, inter alia, actual innocence, ineffective assistance of counsel support-
ed, inter alia, the affidavit of Napolean Wells attesting to fact that his
sister confessed to him that she committed the crimes for which Petitioner
was convicted of, however, on June 29, 2004, said court granted the state's

motion to dismiss claiming that said affidavits were incredible, without
a full and fair hearing for live testimony to develop an adequate record;
and where the state reviewing courts denied him corrective process for
the same;

2) The state court's decision is contrary to clearly established fed-
eral law as determined by the Supreme Court of the United States because
on July 26, 2006 the state reviewing court arrived at a conclusion on a
question of law opposite to that reached by the United States Supreme Cou-
rt in determining if he made a substantial showing to support his claim of
ineffective assistance of counsel for failure to investigate and present
information that was readily available, in particular, where his preoffer
involved affidavits indicating someone other than the Petitioner committed
committed the crimes for which he was convicted of, and thereby creating
a factual dispute regarding counsel's knowledge, acts and/or omissions,
however, said court affirmed the trial court's June 29, 2004 grant of the
state's motion to dismiss raising a credibility issue, and entry of judgment
on the pleadings without holding an evidentiary hearing, despite being fully
briefed on the opposing legal conclusion reached by the United States Supre-
me Court; and where the state highest court denied him the corrective pro-
cess for the same;

3) The state court's decision involves an unreasonable application of
clearly established federal law as determined by the Supreme Court of the
United States because the state reviewing court unreasonably extended the
correct legal principle to a new context that should not apply, in particu-
lar, where said court expressly applied a de novo standard of review to the
trial court's June 29, 2004 judgment on the pleadings without a hearing, yet
limited the scope and extent of such review to exclude significant portions
of the substance of said pleadings, namely, inter alia, failure to present
readily available information at which was central to his ineffective assi-
stance of counsel claim, however, on July 29, 2006 under such a narrow re-
view, said court affirmed the trial court's June 29, 2004 grant of the state's
motion to dismiss and judgment on the pleadings without holding a full and
fair hearing; and where the state highest court denied him corrective process
for the same;

4) The state court's decision is based on an unreasonable determination
of facts in light of the evidence presented in the state court proceeding

because both state trial and reviewing courts' had before it, yet apparent-
ly ignored evidence that supports his overlapping claims that due to his
trial counsel's ineffectiveness for failure to present readily available
information showing he was actually innocence and confession was false
rendered such factual basis in effect unavailable, and his trial fundament-
ally unfair, in particular, where he provided several affidavits, namely,
that of Napolean Wells' attestation to the fact that his sister had confess-
ed to him that she committed the crimes for which petitioner was convicted
of, however, despite the strong exonerative and probative value of such evid-
ence, the trial court granted the state's motion to dismiss raising an issue
of credibility which was non-cognizable under said motion, and entered judg-
ment on the pleadings on June 29, 2004, without a hearing; and where the
reviewing court under the guise of a de novo standard of review entered its
own finding of incredibility without a fully developed record containing
live testimony of the affiants; and where the state highest court denied him
corrective process for the same; and

   5) The state court's decision is based on an unreasonable determination
of facts in light of the evidence presented in the state court proceeding
because the state reviewing court misstated the record on a material factual
issue central to his claim of counsel's ineffectiveness for failing to investi-
gate or present readily available information, namely, inter alia, Lotti Banks'
potential testimony at trial, however, said court in its July 26, 2006 recital
and rendition held that affaint Lotti Banks' affidavit claiming that trial
counsel never asked her to testify was positively rebutted by her testimony
at the petitioner's sentencing hearing, yet materially omitted that Lotti Banks'
affidavit expressly referred to "at trial" and thereby excluding any sentenc-
ing stage, under such missapprehension, said court affirmed the trial court's
previous ruling; and where he was denied corrective process by the state high-
est court for the same.

---

Because of such fact, Petitioner asserts his "custody" is unlawful under the
Fourteenth Amendment of the United States Constitution.  Accordingly, he affirma-
tively asserts his inherent interest to "liberty" and "by the law of habeas corpus"
against the unlawful restraint imposed upon him by substantially defective process-

es.

## NATURE OF THE CASE

Petitioner is a state prisoner seeking habeas corpus review on the denial of his post-conviction petition claim violations of his constitutional rights, namely, his right effective assistance of counsel under the Sixth Amendment of the United States Constitution; and his right to a fundamentally fair trial under the Fourteenth Amendment of the United States Constitution.  Also, a factually overlapping claim of actual innocence.

Petitioner believes that his "Petition" for habeas corpus, and the instant "MEMORANDA" rebuts the presumption of correctness afforded to state court proceedings and thereby entitling him to an evidentiary hearing thereupon.

## STATEMENT OF FACTS

ON JULY 21, 1986, following a bench trial in the Circuit Court of the Cook County, then, 18 year old Drew Terrell was convicted of the August 27, 1985 murder and aggravated criminal sexual assault of 15 month old Laura Hampton.  Subsequently, Mr. Terrell waived his right to a sentencing jury, and on August 28, 1986, the trial court sentenced Mr. Terrell to death and to a 60 year term of imprisonment for the aggravated criminal sexual assault conviction.  Throughout these proceedings, Mr. Terrell was represented by a private attorney hired by his father.  However, on appeal, Mr. Terrell was represented by an appointed ι attorney from the Office of the State Appellate Defenders.  The Illinois Supreme Court affirmed Mr. Terrell's convictions but vacated his sentences and also remanded to the circuit court of cook county for a new sentencing hearing.  People v. Terrell, 132 Ill.2d 178, 547 N.E.2d 145 (1989) cert. denied, 493 U.S. 959,110

S.Ct. 2567, 109 L.Ed.2d 749 (1990)  During the pendency of his original direct
appeal, Terrell's previous trial counsel William O'Neal went before Judge Suria
in the circuit court of cook county for the hearing of a post-trial sentencing
petition seeking a vacatur of Terrell's death sentence based on, inter alia,
state's failure to provide notice to provide notice of witnesses that the state
intended to call.  Said petition was denied, but, the trial court however noted
counsel's failure to investigate or request information as to what witnesses
the state intended to offer in aggravation, in particular, where Judge Suria
stated on record, in relevant part that:

> "In response to your specific numbered paragraphs, the objections to
> the manner in which the Court arrived at the imposition of the death
> penalty, let me say that probably the best way to sum up the Court's
> posture is that I make note of the example during the course of the
> death penalty hearing you had no notice as to what witnesses were to
> testify.  I would only indicate for the record had there been any re-
> quest any request in the proceedings so you could verify, check out
> or attempt to rebut any of the information offered by the State I
> would have been happy to give you some time in this regard.

(See page 11 of EXHIBIT D2-18, attached hereto, which is a true and correct
copy of March 31, 1987 REPORT OF PROCEEDINGS depicting a hearing on post-trial
sentencing petition before Judge Fred G. Suria)

Equally important, the trial court noted that he had substantially relied upon
Terrell's testimony, statements to police, the contradictoriness thereof and
his failure to offer support of his story, in finding Terrell guilty and im-
posing the death penalty, in particular, where the trial court stated in rele-
vant part that:

> "...based upon my twenty-four years experience, I have no equivoca-

tion and no hestitation, based upon all of the testimony but to find
that Drew Terrell was, in fact, the perpetrator of all these acts that
caused all of these injuries.    I based that upon his testimony from
the stand, his statement that he gave to the police, the contradictori-
ness thereof and he offered no support of the story that he gave on
stand...So having no problem with the factual matter that he is the sole
party responsible for this conduct. I have no hestitation or equivocation
in imposing the ultimate sentence in this case."

(See page 16 thru 17 of EXHIBIT D, attached hereto, )

On remand, Mr. Terrell was represented by the Cook County Public Defenders,
when, in the investigation of evidence to present in mitigation, Mr. Terrell new
attorney discovered evidence that suggested that someone other than Mr. Terrell
committed the crimes for which he was convicted of, and attempted to present and
argue  before the sentence jury that the imposition of the death penalty was pre-
cluded because of his actual innocence.  However, Judge Suria refused to allow
Mr. Terrell to present and argue in mitigation to the sentencing jury any evidence
that would raise residual or lingering doubt and rejected approximately 13 poten-
tial witnesses' testimony, as well as narrowing the scope and extent of the wit-
nesses actually allowed in mitigation testimony.  On April 7, 1995, a jury found
Mr. Terrell eligible for the death penalty and no mitigating circumstances. People
v. Terrell, No. 85 CR 10757.    Shortly thereafter, Mr. Terrell perfected an appeal
to the Illinois Supreme arguing, inter alia, that the trial court's preclusion
of evidence that demonstrate that a residual or lingering doubt existed as to his
guilt for the crimes he was convicted of, violated his constitutional right.  How-
ever, the Illinois Supreme Court affirmed, and he then petition the United States
Supreme Court for a writ of certiorari, which was subsequently denied and thereby
finalizing Terrell's case.  People v. Terrell, 185 Ill.2d 467, 708 N.E.2d 309 (1998)

cert. denied 528 U.S. 881, 120 S.Ct. 194, 145 L.E.2d 163 (1999)

Prior to the finalization of his case, Mr. Terrell properly filed a May 26, 1997, Pro Se Post-Conviction Petition wherein he simultaneously sought the appointment of counsel. Alan Freeman and Carol Heise were appointed to represent Mr. Terrell's post-convition proceedings. Said attorneys filed an Amended Post-Conviction Petition alleging an overlapping ineffective assistance counsel under the Sixth Amendment of the United States Constitution; Actual Innocence; and a denial of the fundamental right to a fair trial under the Fourteenth Amendment of the United States Constitution due to his trial counsel failure to investigate and present readily available evidence that strongly suggested that someone other than Mr. Terrell committed the crimes for which he was convicted of, and that his confession was false in light of expert testimony of Terrell's low I.Q. and High sugestibility. In support of said amended petition, said attached several affidavits, namely, that of Napolean Wells who attested to the fact that he had personal knowledge that his sister confessed to him that she in fact committed the crimes for which Mr. Terrell was convicted of, and that she told Terrell to confess because he (at his young age) would get less time than her and he was better able to handle prison. (See page 7 thru 8 of EXHIBIT C1 thru 9, which is true and correct copy of excerpts of the first Amended Post-Conviction Petition) On May 20, 2004, the state raised issues of credibility in arguing their motion to dismiss. Subsequent thereto, on June 29, 2004, Judge Suria granted state's motion to dismiss, however, the trial court's finding seems to based on application of the prejudice prong or a harmless error analysis to the claims of ineffective assistance of counsel properly before the court, in particular, where the trial court noted in relevant part that:

> "The question is whether or not there is a reasonable expectation that
> the verdict would be different as I understand the burden of proof, and

and I can't conceive any such expectation..."

(See EXHIBIT B1 thru 5, attached hereto, which is a true and correct copy of the
June 29, 2004 REPORT OF THE PROCEEDINGS depicting an oral judgment)

Although Judge Suria previously noted trial counsel's lack of diligence, and re-
fused to allow testimony at resentencing on the basis that such evidence raises
residual or lingering doubt as to the Petitioner's guilt, said Judge now "can't
conceive" any exonerative nor probative value of said evidence in support of the
Petitioner's overlapping actual innocence and ineffective assistance of counsel,
despite the fact that during the pendency of the Petitioner's post-conviction
proceeding Mr. Terrell's petition for commutation[1] based on many of the facts the
Petitioner attempted to develop the record on during resentencing and in the then
pending post-conviction proceeding, was granted.[1]

On appeal, under a de novo standard of review, the reviewing court in a July
26, 2006 Opinion affirmed the trial court's granting of the state's motion to dis-
miss raising issues of credibility, and entry of judgment on the pleading without
an evidentiary hearing.  However, the reviewing court limited the scope and ex-
tent of the de novo review applied to the dismissal of Mr. Terrell's post-convic-
tion petition to exclude his claim of actual innocence and ineffective assistance
of counsel for failure to call witnesses fully contained within said petition, and
in the reviewing court recital thereof, on the implied basis that the opening brief
did not reiterate said petition in its entirety, in particular, where the review-
ing stated in relevant part that:

> "Notably, defendant does not argue actual innocence or ineffective
> assistance of counsel for failure to call witnesses.  In his brief

---

1:
Pursuant to Rule 201(b) of the Federal Rules of Evidence, Petitioner seeks for
this Court to take judicial notice of the facts contained in his petition for
commutation that are material in determining whether an evidentiary hearing is
warrant on the petition for habeas relief because such petition for commutation

defendant narrowly frames the issue before us as "whether [defendant's]

initial trial was rendered unfair by failure of his attorney to con-

duct an adequate investigation."

\* \* \* \*

We review de novo the trial court's dismissal of a petition with-

out an evidentiary hearing..."

(See EXHIBIT A1 thru 8, attached hereto, which is a true and correct copy of the

July 26, 2006 Mandate of the Illinois Appellate Court) also compare: page 1 and

2 thru 7 of EXHIBIT E1 thru 7, attached hereto, which is a true and correct copy

of excerpts from the Opening Brief on appeal)

Also, the Court rejected the state's argument that Mr. Terrell's claims were waiv-

ed or barred by res judicata, the Court reasoned that his claims were based on

matters outside the record, namely, affidavits. However, in denying Mr. Terrell

relief on appeal, the reviewing Court relied on a mistatement of the record there-

on the Court concluded that Mr. Terrell's supporting documents were positively

rebutted by the record. Particularly, the reviewing court made a material omission

of the supporting affidavit of Lotti Banks, omitting "at trial" from her attested

statement that she was never asked to testify, and relied on said misrepresentation

as an adjudicative fact in concluding that her testimony at the original sentence

hearing positively rebutted her attested statement.

(Compare page 5 thru 8 of EXHIBIT A; and pages 7 of EXHIBIT C1 thru 9, attached

hereto, which is a true and correct copy of excerpts of the Amended Post-Convict-

ion Petition)

On January 4, 2007, Mr. Terrell's Petition for Leave to Appeal to the Supreme Court

was denied.

---

1:

is a public document and is therefore "capable of accurate and ready determina-

tion by resort to sources whose accuracy cannot reasonably be questioned."

THE  GROUNDS AND ARGUMENT(S)

### Analysis

I.  **Petitioner Is Entitled To An Evidentiary Hearing On His Petition for Habeas Corpus Relief.**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter, "AEDPA") habeas relief will not be granted for any claim previously adjudicated on the merit in state court unless the decision was (1) "contrary to, or invol-ved an unreasonable application of" federal law clearly established by the Su-preme Court, or (2) "based on an unreasonable determination of the facts." See 28 U.S.C. § 2254.

In <u>Williams</u>, the Supreme Court found that "contrary to" means that a state court: 1) arrives at a conclusion on a question of law opposite to that reached by the Supreme Court or 2) when confronted with materially indistinguishable facts from a Supreme Court precedent, arrives at an opposite result. Williams v. Taylor, 529 U.S. 362, 405 (2000)  "Unreasonable application" means that a state court: 1) id-entifies the correct legal rule but unreasonably applies it to the facts of the case or 2) unreasonably extends the correct legal principle to a new context that should not apply or unreasonably refuse to extend the principle to a new context. Ouska v. Cahill-Masching, 246 F.3d 1036, 1054 (7th Cir. 2001)

In <u>Wiggins</u>, the Supreme Court found that "unreasonable determination" readily applys to situations where petitioner challenges the state court's findings based entirely on the state record.  Such a challenge may be based on the claim that the finding is unsupported sufficient evidence.  Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 2538-39, 156 L.Ed.2d 471 (2003) also see Ward v. Sternes, 334 F. 3d 696, 705-08 (7th Cir. 2003). .Moreover, it is notable that intrinsic challenges to state-court findings pursuant to the "unreasonable determination" standard come in several favors, each presenting its own  peculiar set of considerations.

No doubt the simplest is the situation where the state court should have made findings of fact but neglected to do so. In that situation, the state-court factual determination is perforce unreasonable. See Wiggins, 123 S.Ct. at 25-39-40. A somewhat different set of considerations applies where the state-court does make factual findings, but does so under a misapprehension as to the correct legal standard. Obviously, where the state court's legal error infects the fact-finding process, the resulting factual determination will be unreasonable. Closely related to cases where the state courts make factual findings infected by substantive legal error are those where the fact-finding process itself is defective. If, for example, a state court makes evidentiary finding without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an unreasonable determination of facts. Similiarly, where the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermined the fact-finding process, rendering factual finding unreasonable. See, e.g., Wiggins, 123 S.Ct. at 2538-39. And, as the Supreme Court noted in Miller-El, the state-court fact finding process is undermined where the state court has before it, yet apparently ignores, evidence that supports petitioner's claim. Miller-El, 537 U.S. at 346, 123 S.Ct. 1029; Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) Under any of the forementioned instances, a state court's finding presumption of correctness is rebutted.

In Blackledge, the Supreme Court noted when a claim is based on matters extrinsic of the record, such as affidavits can rarely be conclusive because such veracity of witnesses who signed the affidavits on which said claim was at issue, such a claim could not be adjudicated without an evidentiary hearing. Blackledge v. Allison, 431 U.S. 63, 82 n. 25, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) Moreover,

the truth of each party's affidavits is assumed and where the state court rejects

a claim without an evidentiary hearing nor any consideration of such assumptions

of truth, it can't reasonably be said that a habeas corpus applicant failed to

develop the factual basis of his or her claim in the state court, the district in

such situations may proceed to consider whether a hearing is appropriate or re-

quired under Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)

## Argument(s)

**A.   Ground one: THE STATE COURT'S DECISION IS BASED ON AN UNREASONABLE DETERMINATION OF FACTS IN LIGHT OF THE EVIDENCE PRESENTED IN THE STATE PRO- CEEDING:**
**BECAUSE THE STATE COURT MADE AN EVIDENTIARY FINDING AND ENTERED JUDGMENT ON WITHOUT HOLDING A HEARING AND GIVING THE PETITIONER AN OPPORTUNITY TO PRE- SENT EVIDENCE, et seq.**

It is the Petitioner contention that he is entitled to an evidentiary hearing

on his petition for habeas corpus because the state court's decision is based on

an unreasonable determination of facts, in particular, where his post-conviction

petition was based on matters outside the record, namely, affidavits, in support-

ing his factually overlapping claims of actual innocence, ineffective assistance

of counsel, and a resulting denial of the fundamental right to a fair trial, the

state trial court granted states motion to dismiss raising a factual dispute of

credibility of the documentary testimony, yet the state trial court dismissed said

petition without an evidentiary hearing and coupling this unresolved dispute with

its own finding of incredibility based on the court's subjective opinion, disre-

garding dispelling evidence presented.

Petitioner believes that he is entitled to an evidentiary hearing because:

1.  Because the state trial court dismissed his petition on a finding that

the attached affidavits were incredible without an evidentiary hearing, in parti-

cular, where the state's motion to dismiss raised issues of credibility.

2. Because the state trial court dismissed his petition on its on finding of incredibility of the supporting affidavits based on its own subjective opinions of what a Mother will and will not do, yet disregarded documentary testimony of the Mother at issue lengthy distrubing behavior, in particular, where the trial court in rejecting the Petitioner's claims reasoned: "what would cause the mother to do such a thing if she were present." See EXHIBIT B3 . However, said court completely disregard the supporting attested document showing many observation of the Mother at issue violent and abusive behavior, as well as years of drug abuse and thereby prohibited the Petitioner from developing a complete record of bad character evidence, and more importantly Napolean Wells' testimony that his sister actually confessed to him for committing the crimes for which the Petitioner was convicted of, and manipulated her then 18 year old son to take her case, and expert testimony that now as an adult the Petitioner has an I.Q. of 80 which is below average, and high suggestibility.

Under, inter alia, the aforementioned principle of law, the Petitioner is entitled to an evidentiary hearing due to the state court decision being based on an unreasonable determination of facts in light of the facts presented to the state court proceeding.

**B. Ground two: THE STATE COURT'S DECISION IS CONTRARY TO CLEARLY ESTA-BLISHED FEDERAL LAW AS DETERMINED BY THE SUPREME COURT OF THE UNITED STATES BECAUSE THE STATE REVIEWING COURT ARRIVED AT A CONCLUSION ON A QUESTION OF LAW OPPOSITE TO THAT REACHED BY THE UNITED STATES SUPREME COURT, et seq.,**

It is the Petitioner contention that the state reviewing court's decision is contrary to clearly established federal law governing ineffective assistance under the Sixth Amendment of the United States Supreme Court, in particular, where on appeal, the Petitioner argued an ineffective assistance counsel claim based on counsel's failure to investigate or present readily available information with exonerative and probative value, in particular, where had counsel in-

vestigation been more adequate, he would have discovered that Mr. Terrell's Mo-

ther had given a guilt ridden confession to her brother Napolean Wells confess-

ing that she had committed the crimes for which the Petitioner was convicted of,

and manipulate her impressionable son then 18 years old to accept responsibility

for her because he would be treated less severe than her. (collaberating expert

opinion on Mr. Terrell's now as an adult having an I.Q. of 80 that is borderline

or below average with high suggestibility whereby it could be reasonably inferr-

ed that Mr. Terrell's I.Q. and suggestibility was worst at the age of 18 years

old, such opinion was attached to his post-conviction petition)

    Petitioner believes that he is entitled to an evidentiary hearing because:

    1.  Because the state reviewing court reached a conclusion contrary to clear-

ly established ineffective assistance counsel challenge under the Sixth Amendment

as determined by the United States Supreme Court in the cases of Strickland v.

Washington, 466 U.S. 668, 688, 693-94, 104 S.Ct. 2052, 80 L.E.2d 674 (1984); and

Massaro v. United States, 538 U.S. 500, 505, 123 S.Ct. 1690, 1694, 155 L.Ed.2d 714

(2003), in particular, where Petitioner fully briefed the reviewing court on the

established principles in Strickland, and Massaro dealing with rebutting the str-

ong presumption given to counsel's decision made in the exercise of their profes-

sional judgment, and where the Petitioner demostrated that trial counsel failed

to investigate and present readily available information with both exonerative

and probative value, namely, approximate eight witnesses, and thereby creating

a mixed presumption surrounding counsel's investigative steps and decisions which

under Massaro should have been resolved in an evidentiary hearing, however, inst-

ead of reversing and remanding for an evidentiary hearing, the reviewing court

affirmed the state trial court's entry of judgment on the pleading in light of

this factual dispute and granting state's motion raising issues of credibility.

Compare EXHIBIT A with EXHIBIT E and C.

**C. Ground three: THE STATE COURT'S DECISION INVOLVES AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW BECAUSE THE STATE REVIEWING COURT UNREASONABLY EXTENDED THE CORRECT LEGAL PRINCIPLE TO A NEW CONTEXT THAT SHOULD NOT APPLY, et seq.,**

It is the Petitioner contention that the state reviewing court's decision involved an unreasonably application clearly estblished federal law as determined by the United States Supreme, namely, ineffective assistance of counsel challenges under the Sixth Amendment and the scope and extent of the standard of reviewing de novo as a mixed question, in particular, where the reviewing court correctly identified the correct de novo standard of review, yet limited the scope and extent of such review to exclude significant portions of the substance of said pleadings.

Petitioner believes he is entitled to an evidentiary hearing because:

1. Petitioner rely on the facts asserted under grounds one thru three in support of this argument.

**D. Ground four: THE STATE COURT'S DECISION IS BASED ON AN UNREASONABLE DETERMINATION OF FACTS IN LIGHT OF THE EVIDENCE PRESENTED IN THE STATE COURT PROCEEDING BECAUSE BOTH STATE TRIAL AND REVIEWING COURTS HAD BEFORE IT, YET APPARENTLY IGNORED EVIDENCE THAT SUPPORTS HIS OVERLAPPING CLAIMS THAT DUE TO HIS TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILURE TO PRESENT READILY AVAILABLE INFORMATION SHOWING HE WAS ACTUALLY INNOCENCE AND HIS CONFESSION WAS FALSE, SUCH INEFFECTIVENESS RENDERED SAID FACTUAL BASIS IN EFFECT UNAVAILABLE AND FUNDAMENTALLY UNFAIR, et seq.,**

It is the Petitioner contention that both the state trial and reviewing courts completely ignored the evidence he presented in support of his claims of actual innocence, ineffective assistance of counsel, and the resulting denial of fundamental fair trial, in particular, where the Petitioner made a preoffer of several affidavits, namely, that of Napolean Wells attesting the fact that his sister had

confessed to him that she had committed the crimes for which the Petitioner was convicted of, and other affidavits collaborated his sister lengthy disturbing behavior (also as a matter outside of the record but, which this court can take judicial notice of that said sister's own infant died in her care, such fact is contained in the Petitioner petition for commutation which is a public document) yet the state courts made no mention of said evidence in their recitals nor renditions.

Petitioner believes that he is entitled to an evidentiary hearing because:

1. Because the trial court consciously ignored the evidence presented by the Petitioner, in particular, when the Petitioner attempted to develop the record with approximately 13 witnesses whose testimony supported the Petitioner's actual innocence at his resentencing hearing the trial court recognized the residual or lingering doubt such evidence casted on his finding of guilt, however, when said evidence was offered in support of his claims of actual innocence, et seq., the trial court disregarded its previous recognition relying on its own subjective and speculative opinion, instead of objectively weighing the evidence presented, where the trial court stated in relevant part that:

> "The fact that his mother was not present at that time and now suggest-
> ing that his mother is the one who did it, there's no indication in any
> way, shape, or form, what would cause the mother to do such a thing
> if she were present. So for all those reasons, I don't foresee there
> being a different verdict if the evidence, which was presented on PC,
> were to be presented to a trier of fact, and the State, of course, wou-
> ld be offsetting it by testimony under oath, which he gave, which con-
> tradicts everything he's saying. That's not saying it may not be true,
> it's just saying I don't know..."

(See EXHIBIT B002)

Although the trial court states that the "mother was not present," the trial court
unreasonably failed to take notice of the adverse inference created by the victim's
mother Marketta Hampton testimony that she placed her child in the custody and
care of the mother the trial court stated "was not present."

Additionally, although the trial court stated "there's no indication in any way,
shape, or form, what would cause the mother to do such a thing if she were present,"
the trial court unreasonably failed to consider the documentary evidence presented
showing that the mother at issue has, inter alia, sexually abused the Petitioner;
set a fire while the Petitioner was in the house; encouraged the Petitioner to
commit crimes; given the Petitioner illegal drugs; beat the Petitioner with her
fist; attacked the Petitioner's father with a knife; and was jealous of the vic-
tim's mother because the Petitioner was dating her, and therefore the evidence that
was before the court indicated that the typical nurturing mother was not at issue,
yet the court disregard the presented evidence based on its own subjective opinion
of a mother. Also, the trial court disregarded documentary expert testimony show-
ing Petitioner has a full Scale I.Q. of 80, placing him in the borderline to low
average range of intellectual functioning; that his past history, behavioral obser-
vations and results of test of suggestibility are consistent with a Highly sugg-
estible individual who was susceptible to giving erroneous accounts of events to
police during interrogation that "a reasonable probability exist to challenge the
veracity of his confession." (See EXHIBIT C)

   2. Because the state reviewing court repeated the trial court's caprious
disregard of the evidence properly before, and affirmed the trial court judgment
on the pleading without an evidentiary hearing, despite the fact that the lower
court's record was inadequate to show the basis upon which the trial court relied.
(See EXHIBIT A and B) Thus, the state court fact finding process is substantially
undermined under Miller-El v. Cockrell, 537 U.S. 322, 154 L.Ed.2d 931 (2003).

**E. Ground five: THE STATE COURT'S DECISION IS BASED ON AN UNREASON-
ABLE DETERMINATION OF FACTS IN LIGHT OF THE EVIDENCE PRESENTED IN THE
STATE COURT'S PROCEEDINGS**
BECAUSE THE REVIEWING COURT MISSTATED THE RECORD ON A MATERIAL FACTUAL
ISSUE CENTRAL TO HIS CLAIM OF COUNSEL'S INEFFECTIVENESS FOR FAILING TO
INVESTIGATE OR PRESENT READILY AVAILABLE INFORMATION, NAMELY, INTER ALIA,
LOTTI BANKS, SPECIFICALLY AT TRIAL, et seq.,

It is the Petitioner contention that the state court's decision is based on
an unreasonable determination of facts because the reviewing court in deciding
his appeal, said court misstated the record on a material factual issue central
to his claim, in particular, where his, inter alia, ineffective assistance of
counsel claims, were based on his trial counsel's failure to investigate or pre-
sent readily available information, namely, inter alia, Lotti Banks' potential
testimony, however, the reviewing court in its recital and rendition held that
Lotti Banks' affidavit claiming that trial counsel never asked her to testify
was positively rebutted by her testimony at the Petitioner's sentencing hearing,
yet materially omitted that Lotti Banks' affidavit expressly referred to "at trial"
and thereby excluding any sentencing stage, under such misapprehension, said
court affirmed the trial court's previous ruling.

Petitioner believes that he is entitled to an evidentiary hearing because:

1. Because the reviewing court's fact finding process was substantially
defective by said court recharacterizing the Petitioner supporting affidavit of
Lotti Banks in concluding such support was rebutted.  Compare EXHIBIT A007-008,
with EXHIBIT C006.  Thus, under the aforementioned principles of law, the Petit-
ion is entitled to an evidentary hearing.

_____

**CAUSE AND PREJUDICE**

If, any procedural default could be claim by his appointed appellate counsel
handling his appeal from the denial of his post-conviction petition failure to

brief the reviewing court on all the claims raised in his post—conviction petit-
ion although he sought to have said post—conviction to stand on its own, there
is no remedy at law because there is no Sixth Amendment right to counsel under
the United States Constitution nor an appeal therefrom.  Also, the Petitioner
lack the understanding to adhere to the procedural aspects of the law.

Moreover, Petitioner claim of actual innocence overlapped with his claims
of ineffective assistance of counsel rendering his trial fundamentally unfair,
falls within the fundamental miscarriage of justice exception because in light
of the facts alleged herein that it is more likely than not that no reasonable
juror would have convicted him in light of new evidence.

**CONCLUSION**

**WHEREFORE,** Petitioner prays this Honorable Court grant the following:

1)  An Order directing the State of Illinois to hold an evidentiary
to allow the Petitioner to develop the record on his federally protected
claim in 90 days or discharge him;

2) Or an Order granting an evidentiary hearing before this Court.


Respectfully submitted,

($) _____
DREW TERREL,
N-63220, _____

PONTIAC CORRECTIONAL
CENTER,
700 W. LINCOLN AVE.,
PONTIAC, ILLINOIS 61764

**APPENDIX**

## CONTENTS OF APPENDIX

| Tab No. | | Description |
|---------|---|------------|
| 1 | A001—008 | A true and correct copy of July 26, 2006 Mandate of the Illinois Appellate Court. |
| 2 | B001—005 | A true and correct copy of the June 29, 2004 "REPORT OF PROCEEDINGS." |
| 3 | C001—009 | A true and correct copy of excepts from May 16, 1997 Amended Post—Conviction Petition. |
| 4 | D001—017 | A true and correct copy of the March 31, 1987 "REPORT OF PROCEEDINGS" **(supplemental record)** |
| 5 | E001—007 | A true and correct copy of excepts of Opening Appellate Brief. |

Tab No. 1

EXHIBIT A

The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

THIRD DIVISION
July 26, 2006

No. 1-04-2266

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 85 CR 10757 |
| | ) | |
| DREW TERRELL, | ) | Honorable |
| | ) | Fred G. Suria, Jr., |
| Defendant-Appellant. | ) | Judge Presiding. |

O R D E R

Defendant Drew Terrell appeals from an order of the circuit court granting the State's motion to dismiss his petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 et seq. (West 1996)) without an evidentiary hearing.  On appeal, defendant contends that he made a substantial showing that his trial counsel provided ineffective assistance by failing to investigate evidence that would have shown that he falsely confessed.  We affirm.

Following a bench trial in 1986, defendant was convicted of the aggravated criminal sexual assault and murder of 15-month-old Laura Hampton.  He received a death sentence for the murder and 60 years for aggravated criminal sexual assault.  On direct appeal, our supreme court affirmed defendant's convictions and vacated his sentences.  People v. Terrell, 132 Ill. 2d 178

1-04-2266

that a stereo had fallen on her.  He later testified that he heard the stereo fall after he returned to the apartment.  When cross-examined about his statement to the police, defendant testified that he confessed because he knew "what happened to people that do not cooperate with the police."  On redirect, defendant denied harming the victim.

In 1997, defendant filed a *pro se* post-conviction petition. Because defendant was sentenced to death, he was appointed counsel, who filed an amended petition.  Relevant to this appeal, the amended petition alleged that defendant's trial counsel provided ineffective assistance by failing "to raise at trial the issue that [defendant] falsely confessed *** and his appellate counsel failed to raise his trial counsel's ineffectiveness." The petition further alleged that "trial counsel could have discovered and presented at trial those same witnesses that the trial counsel at re-sentencing presented, which would have lent credence to a defense position at trial that [defendant's] confession was false."  The petition also alleged, in pertinent part, actual innocence and ineffective assistance of trial counsel for failing to present a false confession expert.

In support of his claims, defendant attached affidavits from eight family members and one clinical psychologist.  The affidavits from the eight family members detailed various instances of the violent and possessive behavior of Elizabeth and

A003

1-04-2266

3d 379, 384 (2005).  In order to receive an evidentiary hearing, a defendant's petition, together with accompanying documentation, must make a substantial showing that his constitutional rights were violated.  <u>People v. Harris</u>, 206 Ill. 2d 1, 13 (2002).  We review the trial court's judgment and not the reasons behind its dismissal of a defendant's post-conviction petition.  <u>People v. Lee</u>, 344 Ill. App. 3d 851, 853 (2003).

All post-conviction petitions must be supported by "affidavits, records, or other evidence" or explain the absence of such documentation.  725 ILCS 5/122-2 (West 1996); <u>People v. Collins</u>, 202 Ill. 2d 59, 66 (2002).  When reviewing the sufficiency of the petition and its affidavits, we take all well-pleaded facts not positively rebutted by the record as true. <u>Jones</u>, 358 Ill. App. 3d at 384.

Here, defendant's post-conviction allegation fails to present a substantial showing because none of the affidavits support his contention that his trial counsel failed to conduct an adequate investigation.  We will now discuss the eight affidavits from defendant's relatives.

Two of the affiants, Eloise Chambers and Drew Terrell, Sr., aver that they talked to defendant's trial attorney. Consequently, these affidavits do not support an allegation of failure to investigate.  See <u>People v. Dean</u>, 226 Ill. App. 3d 465, 468 (1992) (where counsel spoke to the purported witnesses,



- 5 -

1-04-2266

averred that defendant's trial counsel did not contact them.
Earline Wadlington averred that Elizabeth was a negative
influence on defendant, acted violently, and was very possessive
of him.  Unlike most of the other affidavits, Wadlington's
affidavit does not mention that defendant or Elizabeth told her
that Elizabeth committed the crime.  Consequently, her affidavit
does not support defendant's claim that his trial counsel failed
to investigate his allegedly false confession.

Lottie Banks averred that defendant told her during the
trial that Elizabeth committed the crime.  Banks further averred
that she "was never contacted by [defendant's] trial. [sic].
[She] testified as a character witness at his re-sentencing
hearing, but was not asked to testify about this information."
This claim is positively rebutted by Banks' testimony at
defendant's *original* sentencing hearing in 1986, where she
stated,

> "[Defendant] may be 18 or whatever he
> is, but he is still under his mother's
> influence because he wouldn't be here right
> today.  She had him from a baby under her
> influence and he is still under her influence
> right now, unless he wouldn't be here right
> where he is today.  I may be wrong and God
> help me if I am wrong but I believe he is



- 7 -

Tab No. 2

EXHIBIT B

```
 1    STATE OF ILLINOIS )
                        )  SS.
 2    COUNTY OF C O O K )

 3         IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                COUNTY DEPARTMENT - CRIMINAL DIVISION
 4
      THE PEOPLE OF THE      )
 5    STATE OF ILLINOIS,     )
                             )   Criminal
 6            Plaintiff,     )
                             )
 7         vs.               )   No. 85 C 10757
                             )
 8    DREW TERRELL,          )
                             )
 9            Defendant.     )

10                    REPORT OF PROCEEDINGS

11         REPORT OF PROCEEDINGS had at the hearing in the

12    above-entitled cause before the Honorable FRED G. SURIA,

13    Judge of said court, on the 29th day of June, 2004.

14    APPEARANCES:

15            HON. RICHARD A. DEVINE,
                State's Attorney of Cook County, By:
16
              MS. LESLIE QUADE,
17              Assistant State's Attorney,
                for the People of the State of IL.
18
              MR. EDWIN A. BURNETT,
19              Public Defender of Cook County, By:

20            MR. JOSHUA SACHS,
                Assistant Public Defender,
21              for the Defendant.

22    L. B. STONE, CSR
      Official Court Reporter
23    2650 S. California Ave.
      Chicago, Illinois 60608
24
```

191

B001

TT-1    000021

1          THE CLERK:  Drew Terrell, Sheet 1.

2          MR. SACHS:  Joshua Sachs, J-o-s-h-u-a, S-a-c-h-s,

3    for defendant-petitioner, Drew Terrell.

4          MS. QUADE:  State's Attorney Leslie Quade,

5    Q-u-a-d-e,.

6          MR. SACHS:  Your Honor, we were before the Court a

7    number of weeks ago for arguments on the State's motion

8    to dismiss the post-conviction petition.  We were in

9    front of your Honor for ruling.  Since then -- and your

10   Honor had some questions put to me, and since that time I

11   have reviewed the matter and discussed it with Carol

12   Hikes (Phonetic), who was the attorney who represented

13   Mr. Terrell at the time the petition was filed, and the

14   answer to the Court's question, I think, is everything

15   that we had put in has gone in.  We have nothing to put

16   before your Honor that isn't already attached as an

17   exhibit to the petition.  So I hope that answers your

18   Honor's question.

19         THE COURT:  If that answers the question, then my

20   problem is as I pointed out last time I can't conceive

21   how a jury, or a court for that matter, of now accepting

22   diametrically opposed statement by the defendant which

23   contradicts everything that was said at trial.  The fact

24   that he was alone at the time that the injury occurred,

1    the fact that how he found the baby, what caused the

2    injury, the falling of the -- I think it was a television

3    set or some piece of stereo would cause the injury, which

4    we all know could not have occurred as a result of any

5    such thing happening.  The fact that his mother was not

6    present at that time and now suggesting that his mother

7    is the one who did it, there's no indication in any way,

8    shape, or form, what would cause the mother to do such a

9    thing if she were present.  So for all those reasons, I

10   don't foresee there would be any hope at all of there

11   being a different verdict if the evidence, which was

12   presented on the PC, were to be presented to a trier of

13   fact, and the State, of course, would be offsetting it by

14   the testimony under oath, which he gave, which

15   contradicts everything he's saying.  That's not saying it

16   may not be true, it's just saying I don't know, and in

17   the course of our human experiences how that would have

18   any bearing on changing the verdict that was rendered.

19            For that reason, I would, therefore,

20   respectfully grant the State's motion to dismiss the PC.

21       MR. SACHS:  Thank you, your Honor.  Is this the

22   final order or does the Court intend to have any type of

23   written order?

24       THE COURT:  No, this is the final order.  Advise the

```
 1    defendant he does have a right to to appeal.  The

 2    question is whether or not there is a reasonable

 3    expectation that the verdict would be different as I

 4    understand the burden of proof, and I can't conceive of

 5    any such expectation.  It is a final judgment appealable,

 6    and you will advise your client.

 7         MR. SACHS:  I will do that.

 8         THE COURT:  Will you also be representing him on

 9    appeal?

10         MR. SACHS:  If he elects to appeal, I believe we

11    would, and, therefore, I would ask in the event that

12    there be an appeal, that the Capital Litigation Division

13    of the Appellate Division ordered be appointed.

14         THE COURT:  You want to do that now, or do you want

15    to check --

16         MR. SACHS:  I think I should check first.

17         THE COURT:  If you let me know within 30 days, I

18    will add it to the call.

19         MR. SACHS:  Thank you.

20                        (Which were all the proceedings

21                        had in the above-entitled cause)

22

23

24
```

191

Boo4

G00024

TT-5

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS        Page 020

PEOPLE OF THE STATE OF ILLINOIS

                    VS              NUMBER 85C01075701

    DREW        TERRELL

            CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

    I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
 05/20/04 CONTINUANCE BY AGREEMENT                    06/29/04
      SURIA JR., FRED G.
 06/29/04 DEFENDANT NOT IN COURT                      00/00/00
      SURIA JR., FRED G.
 06/29/04 SPECIAL ORDER                               00/00/00
      DEFT TO BE ADVISED BY HIS ATTORNEY OFF CALL
      SURIA JR., FRED G.
 06/29/04 JGMT ON FINDING/VERDICT/PLEA                00/00/00 F        1
      SURIA JR., FRED G.
 06/29/04 SPECIAL ORDER                               00/00/00
      MOTION TO STATE TO DISMISS P.C ALLOWED
      SURIA JR., FRED G.
 07/26/04 NOTICE OF APPEAL FILED, TRNSFR              00/00/00
 07/30/04 NOTICE OF NOTICE OF APP MAILED              00/00/00
 07/30/04 HEARING DATE ASSIGNED                       07/30/04 1713



                    I hereby certify that the foregoing has
                    been entered of record on the above
                    captioned case.
                    Date 08/04/04

    000025

Tab No. 3

EXHIBIT C

45.   At the re-sentencing hearing, the jury found defendant eligible

for the death penalty based on two statutory aggravaing factors: (1)

the defendant had been found guilty of murdering a victim under

12 years of age and the death resulted from exceptionally brutal or

heinous behavior indicative of wanton cruelty; and (2) the

defendant murdered the victim in the course of another felony,

namely that of aggravated criminal sexual assault.   The jury found

no mitigating circumstances sufficient to preclude imposition of the

death penalty and the circuit court sentenced defendant to death.

People v. Terrell, 708 N.E.2d 309, 317 (Ill. 1998).

## CLAIM I

PETITIONER WAS CONVICTED IN VIOLATION OF THE SIXTH AMENDMENT
AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO
THE UNITED STATES CONSTITUTION, AND IN VIOLATION OF STRICKLAND
V. WASHINGTON, BECAUSE PETITIONER WAS DENIED EFFECTIVE
ASSISTANCE OF TRIAL COUNSEL AND APPELLATE COUNSEL WHERE TRIAL
COUNSEL FAILED TO RAISE AT TRIAL THE ISSUE THAT PETITIONER
FALSELY CONFESSED TO MURDER AND AGGRAVATED CRIMINAL SEXUAL
ASSAULT AND APPELLATE COUNSEL FAILED TO RAISE TRIAL COUNSEL'S
INEFFECTIVENESS FOR SAME.

Petitioner's trial counsel failed to raise the issue that petitioner

falsely confessed to murder and aggravated criminal sexual assault

although trial counsel knew, or should have known, that petitioner falsely

confessed to these crimes.

Trial counsel's theory at trial was that petitioner was not present

when the crimes occurred, and he did not commit these crimes, rather,

some unknown other person did.   TR. 270, 272, 275.   Consistent with this

theory, trial counsel could have presented a plethora of petitioner's

000002

(001)

00061

family members, a false confession expert, and could have cross examined the State's witness, Medical Examiner, Dr. Stein, to corroborate the falsity of petitioner's confession and the probability that another person, namely petitioner's mother, committed this crime.

## EVIDENCE OUTSIDE THE RECORD INDICATING THAT PETITIONER CONFESSED FALSELY

Trial counsel failed to investigate and present readily available evidence from several sources that would have raised a reasonable probability that petitioner falsely confessed.

### A.    Evidence From Witnesses Who Testified At Petitioner's Resentencing Hearing

First, trial counsel could have discovered and presented at trial those same witnesses that the trial counsel at re-sentencing presented, which would have lent credence to a defense position at trial that petitioner's confession was false.

Petitioner's counsel at re-sentencing, marshaled a number of family witnesses who gave testimony showing the extreme, lifelong dominance and control of petitioner's mother, Elizabeth Terrell, over petitioner, her perpetual use and abuse of him for her own ends, and her extreme violence toward him. This included the testimony of the following re-sentencing witnesses:

1.    Petitioner's cousin, Elouise Chambers, testified that petitioner's mother totally dominated petitioner, comparing her to "Ma Barker," and wanted petitioner to believe that everyone was against her.

2.    Petitioner's father, Drew Terrell, Sr., testified that petitioner would run away from legal guardians to be with his mother, that she whipped him, and gave him drugs repeatedly including for his birthday

present, and had him steal from relatives for her. April 7, 1995, RH 36, 38, 42, 58, 62.

3.    Petitioner's step mother, Teresa Terrell, testified that petitioner's mother was possessive of him, had him stealing from relatives, and gave petitioner "reds and reefer" for his 10th birthday. April 7, 1995, RH 70.

4.    Petitioner's aunt, the sister of Elizabeth Terrell, testified that she saw Elizabeth beat Drew with her fists. April 7, 1995, RH 92

5.    Petitioner's cousin, Lottie Banks, testified that when petitioner was age 7, he knew all about how to use a syringe he found because he saw his mother use it, and that petitioner's mother told Ms. Banks that she wanted petitioner to stay with her so that she could use him to get welfare checks. April 7, 1995, RH 110, 112.

B.    Additional Important Testimony From Readily Available Witnesses

Second, trial counsel could have also investigated and presented a wealth of testimony from readily available wittnesses that would have created a reasonable doubt the petitioner committed this crime. This could have included the following:

1.    Eloise Chambers stated in an affidavit that petitioner's mother's relationship with petitioner was like that of a couple of dope fiends; that Elizabeth Terrell "brain washed petitioner and convinced him that his job was to protect and take care of her."

Ms. Chambers further stated that:

I also remember seeing [the victim's mother] Marketa Hampton visiting Drew in the county jail sometime before his re-sentencing. I heard Markeeta tell Drew that she knew he was not the one who killed her daughter and she asked him to 'come clean' about his mother's involvement. Drew told Marketa that Liz was coming that

night to see him.  Markeeta  said if she comes there, she is going
beat her up, because she wanted to see the guilty party in jail and
not Drew."

In addition, Ms. Chambers states in her affidavit that she told all these
things to Drew's trial attorneys regarding Elizabeth Terrell's "behavior,
her treatment of Drew, and Drew's cover up to protect his mother by
taking the blame for this crime."   Affidavit of Eloise Chambers, June 29,
1999, attached as Exhibit 1.

2.    In a second affidavit, Eloise Chambers stated that she observed
Elizabeth Terrell having Drew do drugs like marijuana and drinking
alcohol from age five or six.; that she sent Drew to steal from people
including relatives beginning when he was seven or eight; that she kept
him out of school so he could shoplift; that she recalled "Elizabeth setting
fire to the apartment she and Drew Jr. lived in when Drew was around
seven years old;" that she set the fire out of anger towards the building
owner, who was her own mother, Inez Wells (Drew's grandmother), and
she was envious of this grandmother's relationship with Drew; that she
personally observed Elizabeth beating Drew on occasions, hitting him with
closed fists and heard Elizabeth talking about having beat Drew with a
belt when he was a child; that Elizabeth was violent toward other family
members; that "Elizabeth was jealous of the victim's mother, Marketta
Hampton; that "Elizabeth brain washed Drew into believing it was his job
to protect and take care of her;" that "right before Drew Jr. was arrested
in this case, Elizabeth told him to take the rap for her.  Elizabeth told
Drew he was young and the authorities would therefore go easy on him
while she would get the death penalty if she confessed."

C00005        C004

00064

Also in this second affidavit, Eloise Chambers stated that she was present when Marketta come to the county jail to visit Drew, and she was present when Marketta stated that she "knew Drew did not kill the victim," and she further stated that Elizabeth was the guilty party. Ms. Chambers stated she was contacted by petitioner's trial attorney, but that she was not asked to testify.  Affidavit of Eloise Chambers, April 8, 2000, attached as Exhibit 2.

3.    Petitioner's father, Drew Terrell, Sr., stated in an affidavit that petitioner's mother was violent towards him and other members of their family, including attacking him with a knife while he was holding their baby daughter, Madeline, stating:   "Liz had become enraged about some little thing and came at Madeline and I with a butcher knife."  He further elaborated on the extent to which Drew protected his mother throughout his childhood and young adulthood; and on Drew telling him that his mother told him to "take the rap" for killing Laura Hampton and to say he was "hyped up on drugs", since Elizabeth would get "the chair" if she were convicted.  Affidavit of Drew Terrell, Sr., June 21, 1999, attached as Exhibit 3.

4.    In a supplemental affidavit, Drew Terrell, Sr. documented the violence inflicted on petitioner by his mother; his mother's control over petitioner, including his stealing exclusively for her; his mother's violence toward Drew Terrell, Sr., including several instances of threatening to kill him, once while holding a gun to him.  It recounted that Elizabeth had told Irene Weatherall, a maternal cousin of petitioner, that she was going to "get that baby out of her house" referring to the victim, Laura Hampton. He also describes his knowledge of Elizabeth's incestuous relationship with Drew. Drew Terrell, Sr. was never asked to testify at trial

concerning any of this information. Supplemental Affidavit of Drew Terrell, Sr., June 21,1999, attached as Exhibit 4.

5.    In an affidavit, Theresa Terrell, petitioner's step-mother, elaborated on the violence of Elizabeth Terrell toward her son, Drew, and his stealing for the benefit of his mother, her need for Drew to be with her to protect her as she was "constantly getting in trouble."   In addition, Theresa Terrell's affidavit recounts Elizabeth's jealousy of the victim and the victim's mother, Marketta Hampton, and her sexual abuse of petitioner.   Theresa Terrell was never asked to testify as to this information at petitioner's trial.   Affidavit of Theresa Terrell, June 8, 2000, attached as Exhibit 5.  <u>See also</u> Affidavit, Elsie Teague, April 20, 2000, attached as Exhibit 6 (Elsie Teague, petitioner's great aunt, states that she witnessed Elizabeth Terrell's violence toward petitioner and others).

6.    The affidavit of Madeline Terrell, petitioner's grandmother, recounts Elizabeth Terrell setting fire to their apartment building when Drew was 7 years old, and Drew having to break a window in order to escape. Madeline Terrell also states that Elizabeth taught petitioner to steal things; that she observed Elizabeth getting into trouble with drug dealers; that she observed Elizabeth's child, Drew, trying to protect her from these individuals; that the worse Elizabeth treated Drew, the harder he tried to protect her; that he was forced to take over the role of parent as a young child; that Elizabeth made Drew feel he was responsible for her safety and protection; and that she brainwashed Drew into believing he was responsible for her; that the older he got, the more she demanded he protect her; and that she told Drew the authorities would be lenient with



19

000066

her but if she confessed, they would give her life in prison or the death penalty. Madeline Terrell was not asked to testify to this information at trial, but she would have done so. Affidavit of Madeline Terrell, May 6, 2000, attached as Exhibit 7.

7.   In an affidavit, Lottie Banks, petitioner's cousin, stated: that petitioner told her that his mother, Elizabeth Terrell, committed the crime for which he is on death row, and that he was covering for her because he could not stand to  see her go to jail; that Marketta Hampton, the victim's mother, told her that Elizabeth was babysitting the victim at the time of the crime while Drew was outside of the apartment; that petitioner told her that Elizabeth told him to cover for her crime as the police would be lenient on him because he was young and using drugs; that Elizabeth had complete control over petitioner, as if he was possessed by her; that even before he was a teenager, she would gain control of him by giving him drugs; that he stole from his great aunt after Elizabeth told him to so that she could buy drugs with the money. Lottie Banks recalled that Elizabeth set fire to her house at night while Drew was inside sleeping. He was eight or nine years old at the time. She also recalled that Elizabeth was jealous of Marketta Hampton, the victim's mother because she was seeing Drew; she recalled hearing that Elizabeth was sexually abusing Drew. Ms. Banks was never asked to testify at trial, but would have testified to this information had she been asked. Affidavit of Lottie Banks, April 5, 2000, attached as Exhibit 8.

8.   In an affidavit, Napolean Well, petitioner's uncle and Elizabeth Terrell's brother, testified that Elizabeth told him that she told Drew to confess to the crime to cover for her because he would get less time than her and be better able to handle the prison sentence. He also stated that

she withheld Drew from school to punish him, had him stealing and using drugs, and would beat him if he did not comply with her wishes; that she was more like a girlfriend to her son than a mother; that they used drugs together. Affidavit of Napolean Wells, April 19, 2000, attached as Exhibit 9.

9.    In a supplemental affidavit, Wells further elaborated on details of Elizabeth Terrell telling him that she had told Drew to confess to the crime to cover for up her. Additional Supplemental Affidavit of Napolean Wells, May 5, 2000, attached as Exhibit 10.

-In an affidavit, Earline Wadlington reiterates much of the above-stated evidence concerning the violence of Elizabeth Terrell toward her son, Drew Terrell, and towards others, her control of Drew and Drew's lifelong history of protecting his mother. Affidavit of Earline Wadlington, April 13, 2000, attached as Exhibit 11.

Trial counsel's failure to investigate and present these above-stated witnesses, testimony and evidence falls below the normal standard of care in a capital case.

Trial counsel had no strategy reason to fail to investigate and present these witnesses and their testimony at trial. The above-stated evidence and witness testimony was consistent with trial counsel's theory of this case. Trial counsel's theory at trial was that petitioner was not present when the crimes occurred, and he did not commit these crimes, rather, some unknown other person did. TR. 270, 272, 275.

Petitioner was prejudiced by trial counsel's failure to investigate and present these witnesses. There is a reasonable probability that but for trial counsel's failure to investigate and present the above-stated

witnesses, testimony and evidence, the outcome of petitioner's trial would have been different.

C.    Failure of Trial Counsel to Request a False Confession Expert to Examine Petitioner and Present Testimony That a Reasonable Probality Exists That Petitioner Falsely Confessed to This Crime

1.    Petitioner's counsel could have, but failed to, request a forensic psychologist to review the petitioner's confession, as well as the facts known, to administer tests designed to assess levels of suggestibility, such as the Gudjonsson Suggestibility Scale 1, and to interview petitioner in order to assess petitioner's psychological functioning as it relates to issues pertaining to the probability of a false confession made by petitioner.

Had counsel done so, he would have learned the following: 1) that petitioner has a Full Scale I.Q. of 80, placing him in the Borderline to Low Average range of intellectual functioning; 2) that his past history, behavioral observations and the results of test of suggestibility are consistent with a highly suggestible individual who was so susceptible to giving erroneous accounts of events to police during interrogation that "a reasonable probability exists to challenge the veracity of his confession." Affidavit of I. Bruce Frumkin, Ph.D., ABPP, attached as Exhibit 12.

Petitioner's present counsel hired I. Bruce Frumkin, Ph.D., ABPP, to assess petitioner's psychological functioning as it relates to issues of false confession made by petitioner.  Dr. Frumkin reviewed background information pertaining to this case, examined petitioner's transcribed confession statement, compared the statement with the facts known about the case, administered a battery of tests to petitioner, including tests of suggestibility, interviewed petitioner, and concluded that "there is a

C009

000069

Tab No. 4

EXHIBIT D

.





Dolo



STATE OF ILLINOIS    )
                     )    SS:
COUNTY OF COOK       )

**FILED**

**MAR 3 1 1987**

MORGAN M. FINLEY
Clerk of the Circuit Court

I, DOLARITE M. WOODS, Official Court
Reporter of the Circuit Court of Cook County, County
Department-Criminal Division, do hereby certify that I
reported in shorthand the above proceedings had in the
aforementioned cause, pending in said court on this date;
that I thereafter caused to be transcribed into typewriting
the foregoing transcript, which I hereby certify is a
true and correct transcript of such proceedings had
in said cause.

*Dolarite Woods*

D617

Tab No. 5

EXHIBIT E

## ARGUMENT

**The Circuit Court Erred in Dismissing Without Evidentiary Hearing Defendant's Post Conviction Claim that his Trial Attorney had Provided Ineffective Assistance When He Failed to Investigate Evidence Provided to Him Suggesting that Defendant Had Falsely Confessed to the Murder in Order to Protect the Actual Murderer, Defendant's Mother.**

When the murder charge against Drew Terrell went to jury trial, the theory of defense advanced by counsel was that Terrell had falsely confessed to a murder which had been committed by some person unknown. In fact, trial counsel had evidence, which he apparently chose not to pursue or investigate, that the killer of Laura Hampton was not unknown at all, but that it was Drew Terrell's mother, Elizabeth Terrell. The information indicated that defendant, who had spent his life under Elizabeth's influence and control, had confessed to a murder which he did not commit in order to protect his dominating and mentally disturbed mother.

Terrell claimed in his post conviction petition (C 48 *et seq*) that his trial attorney provided ineffective assistance when he failed to investigate the information which had been provided to him. "Trial counsel," he asserted, "could have presented a plethora of petitioner's family members, a false confession expert, and could have examined the State's witness, Medical Examiner, Dr. Stein, to corroborate the falsity of petitioner's confession and the probability that another person, namely petitioner's mother, committed this crime." (C 61-62)

The petition lists numerous witnesses, some of whom actually testified for the defense as mitigation witnesses in sentencing proceedings, who could have given testimony in support of the defense that Elizabeth Terrell killed Laura Hampton. (C 62 - 69) The most significant support to the petition came from the affidavits of:

- Eloise Chambers, petitioner's cousin, who was prepared to testify that Elizabeth Terrell was

E 60 l

review, rather than direct appeal, is the appropriate forum for litigation of such claims. See e.g.
*People v. Kunze,* 138 Ill. App. 3d 708, 726, 550 N.E.2d 284, 296 (4th Dist., 1990), *People v.
Morris,* 229 Ill. App. 3d 144, 593 N.E.2d 932, 947 (1st Dist., 1992), *People v. Calvert*, 326 Ill.
App. 3d 414, 421, 760 N.E.2d 1024, 1030 (4th Dist., 2001), and see also *People v. Wilk*, 124 Ill.
2d 93, 107-109, 529 N.E.2d 218 (1988).

The People objected before the circuit court that petitioner's ineffective assistance claim
was foreclosed by *res judicata.* They argued that the Illinois Supreme Court's direct appeal
ruling upholding the denial of defendant's motion to suppress his confession as involuntary
governs his post-conviction claim that trial counsel failed to make an adequate investigation of
evidence establishing that the confession was falsely made by defendant in order to protect his
mother, the actual murderer. *Res judicata* has no application to this situation. The issue on
direct appeal was whether the confession was voluntary and admissible as a legal matter of
constitutional due process. The issue on post-conviction is whether trial counsel failed to
examine known evidence indicating that the confession, voluntary or involuntary, was factually
untrue. The voluntariness issue has been conclusively resolved by the Illinois Supreme Court,
but it does not control, and is in fact irrelevant to, the question on post conviction review.

**Petitioner was entitled to an evidentiary hearing**

In this case trial counsel apparently made a decision not to raise and, indeed, not to
investigate the defense supported by the affidavits even though it was consistent with the theory
of defense actually presented at trial. It is true that *Strickland v Washington*, 466 U.S. 668
(1984), adopted as the Illinois standard in *People v. Albanese*, 104 Ill. 2d 504 (1984), recognizes
a presumption that decisions by counsel are taken on the basis of trial strategy and in this case

-15-



the affidavits in support of the petition themselves establish that information suggesting that

Elizabeth Terrell committed the murder was brought to the attention of trial counsel, who chose

not to use it. Thus, Eloise Chambers states in her first affidavit:

> 8.    I have told all of these things stated herein to Drew's trial and re-sentencing attorney's regarding Liz's behavior, her treatment of Drew, and Drew's cover-up to protect his mother by taking the blame for this crime. (C 80)

In her second affidavit Eloise Chambers states:

> 17.    I was contacted by Drew's trial attorney via the telephone, but never interviewed in person. I was not asked to testify . (C 87-88)

And Drew Terrell, Sr., states in his affidavit:

> 7.    I have told Drew's attorneys, both at the trial and the re-sentencing, about this cover-up, and about Liz's treatment of Drew which led to his belief that he was the only one who could take care of her. (C 90-91)

There is, in other words, no question that trial counsel were told about defendant's relationship with

his mother and had information indicating that he had confessed falsely in order to take the blame

for a crime which she committed. So there was a decision made not to pursue that line of defense

at trial and that decision could perhaps reasonably be characterized a strategic. But that is not the

end of the inquiry.

The United States Supreme Court explained in *Strickland*, 466 U.S. at 690-691 that there are

two kinds of strategic decisions, those which are made on the basis of adequate legal and factual

investigation, and those which are not.

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness

-16-



> case, a particular decision not to investigate must be directly assessed for reasonableness in al the circumstances, applying a heavy measure of deference to counsel's judgments.

This case involves a claim that trial counsel, faced with serious evidence that their client confessed to a crime which he did not commit in order to protect his abusive, dominating and manipulative mother, failed to investigate these allegations. The claim is of a type specifically recognized by *Strickland* as valid.

The People were not entitled to judgment on the pleadings in this case. The petition states a constitutional claim, supported by affidavits which, taken as true and liberally construed in favor of the petitioner and in light of the original trial record,  makes a substantial showing of imprisonment in violation of the state or federal constitution, *People v. Coleman*, 183 Ill. 2d 366, 382, 701 N.E.2d 1063 (1998). That is sufficient to satisfy petitioner's burden at the pleading stage. The failure of counsel did not lie in adopting a trial strategy that did not seek to identify Elizabeth Terrell as the killer of Laura Hampton. It lay in making the decision without adequate investigation. It may often be a dangerous trial strategy to attempt to identify the actual criminal as somebody other than the defendant. And yet in this case it might have been crucial. There was evidence suggesting that Elizabeth Terrell was, indeed, the killer; and the attempt to defend the case on the grounds that the crime was committed some person or persons unknown left the jury with the obvious questions first of how and why some unknown person would have entered the Terrell apartment to kill a 15-month-old child, and second, why Drew Terrell would have admitted to the crime if he did not commit. But if the jury believed that Elizabeth Terrell was the murderer, those questions are no longer unanswerable and indeed no longer mysterious.

The issue as framed by the pleadings presents serious questions of fact. The People argued

-17-

E 504

in the circuit court that some of the affidavits are not credible. That is not an issue to be addressed

at the pleading stage. Questions of credibility call for an evidentiary hearing. *People v. Manikowski*,

288 Ill.App.3d 157, 163, 697 N.E.2d 840 (5th Dist., 1997).

Such a hearing would be able to answer such questions as when counsel learned of the

evidence implicating defendant's mother; what steps, if any, were taken to investigate this

information; and why counsel chose to reject this aspect of the defense which was, as the petition

points out, apparently consistent with the theory of defense as a whole. It is to address such

questions as these that claims of ineffective assistance of counsel are most appropriate for resolution

in collateral proceedings where evidentiary hearing is available. *People v. Kunze*, 138 Ill. App. 3d

708, 726, 550 N.E.2d 284, 296 (4th Dist., 1990), *People v. Morris*, 229 Ill. App. 3d 144, 593

N.E.2d 932, 947 (1st Dist., 1992), *People v. Calvert*, 326 Ill. App. 3d 414, 421, 760 N.E.2d 1024,

1030 (4th Dist., 2001), and see also *People v. Wilk*, 124 Ill. 2d 93, 107-109, 529 N.E.2d 218

(1988), and see *United States v. Yack*, 139 F.3d 1172, 1176 (7th Cir., 1998), *Massaro v. United

States*, 538 U.S. 500, 123 S.Ct 1690, 155 L.Ed.2d 714 (2003).

The circuit court did not dismiss the petition for any procedural default or bar, or because it

expressed any doubt as to the credibility of petitioner's affidavits. Rather, it concluded that no

additional investigation or change in trial strategy would have changed the outcome of the trial. In

its oral ruling dismissing the petition the court said,

> . . . [M]y problem is . . . I can't conceive how a jury, or a court for that matter, of
> now accepting diametrically opposed statement from the defendant which contradicts
> everything that he said at trial. The fact that he was alone at the time that the injury
> occurred, the fact that he found the baby, what caused the injury, the falling of the - -
> I think it was a television set or some piece of stereo would cause the injury, which
> we all know could not have occured as a result of any such thing happening. The fact
> that his mother was not present at that time and now suggesting that his mother is the

-18-



one who did it, there's no indication in any way, shape or form, what would cause the mother to do such a thing if she were present. So for all those reasons, I don't foresee there would be any hope at all of there being a different verdict if the evidence, which was presented on the PC, were to be presented to a trier of fact, and the State, of course, would be offsetting it by the testimony he gave under oath, which he says, which contradicts everything he is saying. That's not saying it may not be true, it's just saying I don't know, and in the course of our human experience ow that would have any bearing on changing the verdict that was rendered. (R 192-193)

For the circuit court to reach such a conclusion at the pleading stage was premature and improper and indeed the court seems to have been confused as to the standard of review and to have believed that Terrell was not prejudiced because he would be unlikely to prevail at a retrial at which his testimony at the initial trial would be admissible. The question actually before the court, however, was whether Terrell's initial trial was rendered unfair by the failure of his attorney to conduct an adequate investigation. The prosecution was no more entitled to prevail by motion to dismiss than petitioner would have been in requesting judgment on the face of the petition. Petitioner's ineffective assistance of counsel claim was sufficient to withstand dismissal on the pleadings and warranted evidentiary hearing.



-19-

## CONCLUSION

For the foregoing reasons, appellant Drew Terrell respectfully requests that this Court reverse the order of the circuit court dismissing his post-conviction petition and that it remand this cause to the circuit court for evidentiary hearing.

Respectfully submitted,

ANNA AHRONHEIM
Deputy Defender

JOSHUA SACHS
Staff Attorney
Office of the State Appellate Defender
Post Conviction Unit
20 N. Clark Street, Suite 2800
Chicago, Illinois 60602
(312) 814-5100

COUNSEL FOR PETITIONER-APPELLANT

## CERTIFICATION OF APPENDIX

I, Drew Terrell, do hereby certify under the penalty of perjury as provided under 28 USC 1746, 18 USC 1621, that the documents contained in the instant Appendix are true and correct to the best of my knowledge and belief.

Signed on 30th day of July of 2007 A.D.

(s) Drew Terrell
DREW TERRELL,
REG. NO. N-63220,

PONTIAC CORRECTIONAL CENTER,
700 W. LINCOLN AVE.,/P.O. BOX 99,
PONTIAC, ILLINOIS 61764.