IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel. | ) | |
| DREW TERRELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 08 C 2328 |
| | ) | |
| EDDIE JONES, Warden, | ) | |
| Pontiac Correctional Center, | ) | The Honorable |
| | ) | Matthew F. Kennelly, |
| Respondent. | ) | Judge Presiding. |

## **ANSWER**

Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United

States District Courts, respondent EDDIE JONES answers the petition for a writ of

habeas corpus filed in the above-captioned cause and states as follows:

1.    Petitioner Drew Terrell – identified as prisoner number N63220 –  is

in the custody of Joseph Mathy, acting warden of the Pontiac Correctional Center in

Pontiac, Illinois.[1]

2.    In 1986, after a bench trial in the Circuit Court of Cook County,

petitioner was convicted of the murder and aggravated sexual assault of 15-month-

---

[1] Joseph Mathy is now the Acting Warden of Pontiac Correctional Center,
where petitioner is presently incarcerated.  He is therefore the "state officer having
custody of the applicant," and should be substituted for Eddie Jones as the named
respondent in this case.  *See* Rule 2 of the Rules Governing Section 2254 Cases in
the United States District Courts; *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004)
(citing *Hogan v. Hanks*, 97 F.3d 189, 190 (7th Cir. 1996)); *Bridges v. Chambers*, 425
F.3d 1048, 1049-50 (7th Cir. 2005); Fed. R. Civ. P. 25(d)(1).

old Laura Hampton, and was sentenced to death and a 60-year term of imprisonment, respectively. *See People v. Terrell*, 547 N.E.2d 145, 147-50 (Ill. 1989) ("*Terrell* I").

3.     As summarized by the Illinois Supreme Court on direct review, evidence at trial established that Laura and her mother were sharing an apartment with petitioner and his mother, Elizabeth Terrell, when Laura was killed. *See id.* at 148. In his transcribed confession, petitioner stated that Elizabeth left petitioner alone with Laura on the day of the murder, while Elizabeth went to a currency exchange. *See id.* at 148. Petitioner called Laura's mother at her workplace and told her that Laura had been injured when she pulled a stereo down on herself. *See id*. At the hospital, petitioner told police the same story, including that he was alone with the victim at the time; however, a physician informed police that Laura had a laceration extending from her vagina to her anus, not consistent with petitioner's version of events. *See id.*

4.     Questioning of petitioner by police continued at the police station for about 10 minutes. *Id.* There, petitioner stated that he was alone with Laura in the apartment when he heard a noise as if something had fallen. *Id.* Petitioner stated that he discovered Laura lying on the floor, with a bruise on her face and stereo components on her leg and above her head. *Id.* Thereafter, petitioner gave a transcribed statement in the presence of an Assistant State's Attorney that petitioner also read and signed, describing a different series of events. Petitioner

stated that he was left alone with the child while his mother went to a currency exchange. *Id*. He brought Laura to his bed, and then struck the child on the back, face, and stomach several times because she kept crying. *See id*. He also inserted a Q-tip and his finger into Laura's vagina "up to the bone" because he was "looking for a pain response." *Id*. at 149. Laura "'hollered for a few minutes, then stopped hollering.'" *Id*. He stopped only when Elizabeth came home; petitioner told her that Laura had been injured when a stereo fell on her. To support his story, he put pieces of a stereo on the floor. *See id*.

5.     At trial, petitioner related a third story: once again, he said he was left alone with Laura while his mother went to a currency exchange. *Id*. He also testified that he had left 15-month-old Laura by herself in the apartment for approximately 40 minutes, and when he returned, it appeared as though a stereo had fallen on her, although he also testified that he heard the stereo fall after he returned to the apartment. *See id*. During that 40 minutes, petitioner testified, he was with "associates" whose names he could not recall. *See id*. He conceded, however, that the words of his confession were his own, he was not told what to say in his confession, and he was not beaten by police into confessing. *See id*. Furthermore, petitioner testified that the statements he made to police at the hospital were true. *See id*.

6.     Postmortem examination revealed that Laura had suffered collapsed lungs, blood in her peritoneal and pleural cavities, contusions of her heart,

lacerations of her liver, tearing of her mesentary, blood on her kidneys and pelvis, and lacerations of her vagina and rectum. *See id*. The medical examiner testified that these last injuries were consistent with a finger or Q-tip being inserted into her vagina. *Id.*

7.     On direct appeal to the Illinois Supreme Court, petitioner raised no issues advanced in this habeas petition. *See* Pet. Br., *People v. Terrell*, No. 64113 (Exhibit A); State Br., *People v. Terrell*, No. 64113 (Exhibit B); Pet. Reply Br., *People v. Terrell*, No. 64113 (Exhibit C); State Response Br., *People v. Terrell*, No. 64113 (Exhibit D); Pet. Response Br., *People v. Terrell*, No. 64113 (Exhibit E). The Illinois Supreme Court affirmed the convictions, but vacated the sentences based on the trial court's improper consideration of victim impact evidence, and remanded for resentencing. *See Terrell I*, 547 N.E.2d at 168.

8.     On remand, a jury again sentenced petitioner to death. *See People v. Terrell*, 708 N.E.2d 309, 317 (Ill. 1998) ("*Terrell II*"). Petitioner appealed, but did not raise any issues asserted in this petition. *See* Pet. Br., *People v. Terrell*, No. 79312 (Exhibit F); State Br., *People v. Terrell*, No. 79312 (Exhibit G); Pet. Reply Br., *People v. Terrell*, No. 79312 (Exhibit H).

9.     Meanwhile, on May 9, 1997, petitioner filed a pro se petition for postconviction relief, pursuant to 725 ILCS 5/122-1, which was replaced by a counseled amended postconviction petition filed April 10, 2003.[2] *See* Pro Se Petition

---

[2] On January 10, 2003, petitioner's death sentence was commuted by then-Governor George Ryan to a sentence of life imprisonment without the possibility of

for Post-Conviction Relief, *People v. Terrell*, No. 85-CR-10757 (Exhibit I);

Petitioner's First Amended Petition for Post-Conviction Relief, *People v. Terrell*, No.

85-CR-10757 (Exhibit J).  That amended petition raised two claims repeated in the

instant petition:

> (a)    trial counsel was ineffective for failing to argue that petitioner had falsely confessed to the crime and that Elizabeth Terrell was in fact the culprit; and
>
> (b)    petitioner was actually innocent of the crime, based on newly-discovered evidence that Elizabeth committed the crime.

*See* Exh. J at 14-29.  In support of these claims, petitioner submitted affidavits from

eight family members:

> (a)    Eloise Chambers, a second cousin;
>
> (b)    Drew Terrell, Sr., petitioner's father;
>
> (c)    Theresa Terrell, petitioner's stepmother;
>
> (d)    Elsie Teague, petitioner's great-aunt;
>
> (e)    Madeline Terrell, petitioner's grandmother;
>
> (f)    Lottie Banks, a cousin of petitioner's father;
>
> (g)    Napoleon Wells, petitioner's uncle; and
>
> (h)    Earline Wadlington, petitioner's second cousin.

These affidavits purported to describe petitioner's relationship with Elizabeth

Terrell, and the affiants' belief that Elizabeth was the true culprit and that

petitioner confessed to the crime to protect her.  *See* Exh. J.

---

parole.  *See* Exh. J at 2.

10.    On June 29, 2004, the trial court dismissed the petition upon motion

from the State, reasoning:

> . . . I can't conceive . . . a jury, or a court for that matter, . . . now
> accepting [a] diametrically opposed statement by [petitioner] which
> contradicts everything that was said at trial.  The fact that he was
> alone at the time that the injury occurred, the fact that how he found
> the baby, what caused the injury, the falling of the – I think it was a
> television set or some piece of stereo would cause the injury, which we
> all know could not have occurred as a result of any such thing
> happening.  The fact that his mother was not present at that time and
> now suggesting that his mother is the one who did it, there's no
> indication in any way, shape, or form, what would cause the mother to
> do such a thing if she were present.  So for all those reasons, I don't
> foresee there would be any hope at all of there being a different verdict
> if the evidence, which was presented on the PC, were to be presented
> to a trier of fact, and the State, of course, would be offsetting it by the
> testimony under oath, which he gave, which contradicts everything
> he's saying.  That's not saying it may not be true, it's just saying I
> don't know, . . . how that would have any bearing on changing the
> verdict that was rendered.
>
>     For that reason, I would, therefore, respectfully grant the State's
> motion to dismiss the PC.

Trial Court Record, *People v. Terrell*, No. 85-CR-10757 ROP at TT3-4 (Exhibit K).

11.    Petitioner appealed to the appellate court, arguing only that the trial

court erred in dismissing his claim that his trial attorney was ineffective for failing

to investigate evidence that petitioner had falsely confessed to protect his mother,

without an evidentiary hearing.  *See* Pet. Br., *People v. Terrell*, No. 1-04-2266

(Exhibit L); *see also* State Br., *People v. Terrell*, No. 1-04-2266 (Exhibit M).  The

Illinois Appellate Court, First District, affirmed the judgment of dismissal, holding

that petitioner's affidavits did not support his contention that trial counsel failed to

conduct an adequate investigation.  *See People v. Terrell*, No. 1-04-2266 (Ill.App. July 26, 2006) (Rule 23 Order) (Exhibit N).

12.    Petitioner filed a petition for leave to appeal (PLA) in the Illinois Supreme Court, arguing that the appellate court erred in (1) affirming the dismissal of his claim of ineffective assistance for failure to investigate evidence without an evidentiary hearing, and (2) applying the wrong standard in evaluating his *Strickland* claim.  *See* PLA, *People v. Terrell*, No. 103432 (Exhibit O).  The Illinois Supreme Court denied the PLA on November 29, 2006.  *See* Order Denying PLA, *People v. Terrell*, No. 103432 (Exhibit P).

13.    On July 30, 2007, petitioner filed the instant petition for writ of habeas corpus, alleging five claims:

(a)    the state trial court erred in dismissing his postconviction petition without a hearing, where he raised claims of actual innocence and ineffective assistance of counsel;

(b)    his trial counsel was ineffective for failing to investigate and present evidence that Elizabeth Terrell had actually committed the crime;

(c)    the state appellate court misapplied Illinois's standard of review in affirming the dismissal of the postconviction petition;

(d)    his trial counsel was ineffective for failing to present evidence that petitioner's confession was false and that he was actually innocent; and

(e)    the state appellate court misstated facts regarding the testimony of Lottie Banks during trial.

Pet. at 5-9.

14.    Petitioner has exhausted his state court remedies with respect to the claims raised in the instant petition.  *See* 725 ILCS 5/122-1(c).

15.    Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, respondent is filing the following state-court materials under separate cover as exhibits to this answer:

Exhibit A:    Pet. Br., *People v. Terrell*, No. 64113;

Exhibit B:    State Br, *People v. Terrell*, No. 64113;

Exhibit C:    Pet. Reply Br., *People v. Terrell*, No. 64113;

Exhibit D:    State Response Br., *People v. Terrell*, No. 64113;

Exhibit E:    Pet. Response Br., *People v. Terrell*, No. 64113;

Exhibit F:    Pet. Br., *People v. Terrell*, No. 79312;

Exhibit G:    State Br., *People v. Terrell*, No. 79312;

Exhibit H:    Pet. Reply Br., *People v. Terrell*, No. 79312;

Exhibit I:    Pro Se Petition for Post-Conviction Relief, *People v. Terrell*, No. 85-CR-10757;

Exhibit J:    Petitioner's First Amended Petition for Post-Conviction Relief, *People v. Terrell*, No. 85-CR-10757;

Exhibit K:    Trial Court Record, *People v. Terrell*, No. 85-CR-10757;

Exhibit L:    Pet. Br., *People v. Terrell*, No. 1-04-2266;

Exhibit M:    State Br., *People v. Terrell*, No. 1-04-2266;

Exhibit N:    *People v. Terrell*, No. 1-04-2266 (Ill.App. July 26, 2006) (Rule 23 Order);

Exhibit O:    PLA, *People v. Terrell*, No. 103432; and

Exhibit P:    Order Denying PLA, *People v. Terrell*, No. 103432.

## ARGUMENT

A.    **Noncognizability**

> 1.    **Petitioner's Claims Challenging The Illinois Courts'**
>       **Application Of Their Postconviction Standards Are Not**
>       **Cognizable.**

Petitioner's claims (a) and (c) — that the state court erred in not granting

him an evidentiary hearing, and misapplied its own standard of review — are not

cognizable because they raise issues of state law.  "[I]t is not the province of a

federal habeas court to reexamine state court determinations on state law

questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  To the extent the claims

could be read as challenging the state court's disposition of his claim on the merits,

respondent addresses them below in part B(2)(c)(i) of this pleading.

> 2.    **Petitioner's Actual Innocence Claim Is Not Cognizable As A**
>       **Freestanding Claim.**

Petitioner appears to raise a freestanding claim of actual innocence (through

claim (d)).  Such a claim is not cognizable.  As the Supreme Court has made clear,

"the existence merely of newly discovered evidence relevant to the guilt of a state

prisoner is not a ground for relief on federal habeas corpus." *Herrera v. Collins*, 506

U.S. 390, 398 (1993).  Instead, petitioner must allege "an independent

constitutional violation occurring in the underlying state criminal proceeding," to

which the newly discovered evidence is relevant.  *Id.* at 400.  Respondent will

address the actual innocence claim within the context of petitioner's ineffective

assistance claim below.

**B.    Petitioner's Ineffective Assistance Claim Is Partially Defaulted And Lacks Merit, And Any Free-Standing Actual Innocence Claim, If It Were Cognizable, Is Procedurally Defaulted.**

**1.    Petitioner defaulted his actual innocence claim and ineffective assistance arguments *other* than counsel's failure to adequately investigate.**

With two exceptions, this Court may not consider the merits of a claim if that

claim is procedurally defaulted.  *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

Procedural default generally occurs in one of two ways:  (1) a petitioner may fail to

raise an issue on direct or postconviction review, *Rodriguez v. Peters*, 63 F.3d 546,

555 (7th Cir. 1995); or (2) the state court may dispose of a claim on an independent

and adequate state law ground, such as a state procedural bar, *Coleman v.

Thompson*, 501 U.S. 722, 729 (1991).

Petitioner's (1) allegations that his trial counsel was ineffective for failing to

present evidence that petitioner falsely confessed and (2) his non-cognizable claim

that he was actually innocent (claim (d) and a portion of claim (b)) are procedurally

defaulted, because they were not raised in one complete round of state court review.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (petitioner must fairly present his

claim in each appropriate state court).  Although petitioner arguably raised these

claims of ineffective assistance for failure to present evidence and actual innocence

in his postconviction petition, he failed to raise them on postconviction appeal to

either the Illinois Appellate Court or the Illinois Supreme Court.  The Illinois

Appellate Court, in fact, specifically noted that this ineffective assistance claim was

not raised before it.  Exh. N at 4.  Neither claim can be found in the appellate briefs

or in petitioner's PLA.  *See* Exhs L, N, & O.   Therefore, this portion of petitioner's

ineffective assistance claim and an actual innocence claim are defaulted.  *See*

*Boerckel*, 526 U.S. at 845; *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999)

(applying *Boerckel*'s one-complete-round rule to Illinois's postconviction appellate

process); *Cawley v. DeTella*, 71 F.3d 691, 694 (7th Cir. 1995) (failure to appeal

claims raised in postconviction petition constitutes default on federal habeas

review); *see also Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (failure to

alert state court to complaint about one aspect of counsel's ineffective assistance

leads to procedural default of this allegation).

A procedurally defaulted claim may nevertheless be heard in two

circumstances.  First, it may be considered if petitioner demonstrates cause

sufficient to excuse the procedural default and actual prejudice resulting from a

failure to obtain review of the merits.  *Murray*, 477 U.S. at 485.  To demonstrate

cause, petitioner must show that there is some external impediment that prevented

him from raising the claim.  *Id.* at 488.  To demonstrate "prejudice," petitioner

would need to show "not merely that the errors at his trial created a *possibility* of

prejudice, but that they worked to his *actual* and substantial disadvantage,

infecting his entire trial with error of constitutional dimensions."  *United States v.*

-11-

*Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Second, an otherwise defaulted claim may be considered if review is necessary to correct a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. To establish a fundamental miscarriage of justice, petitioner must demonstrate that it is more likely than not that no reasonable juror would have convicted him in light of any new evidence. *House v. Bell*, 547 U.S. 518, 537 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Since petitioner has not alleged cause and prejudice, or a fundamental miscarriage of justice, he is not entitled to excuse his default. *See, e.g.*, *Bell v. Pierson*, 267 F.3d 544, 555 n.6 (7th Cir. 2001) (failure to allege grounds for excusing default results in forfeiture). It would not avail petitioner even if his actual innocence assertion were construed as a miscarriage of justice claim. Petitioner could not establish a fundamental miscarriage of justice; as explained below, the evidence of his guilt was overwhelming compared with his "newly-discovered" evidence. Petitioner would not be able to show that it is more likely than not that no reasonable juror would have convicted him in light of his new eivdence. *House*, 547 U.S. at 537.

Therefore, petitioner may not obtain relief based on his allegation that counsel was ineffective for failing to present evidence.

2.    **The appellate court's decision rejecting petitioner's claim that his lawyer was ineffective for failing to investigate was not contrary to, or an unreasonable application of, *Strickland*.**

Under 28 U.S.C. § 2254(d), this Court may grant habeas relief on a claim adjudicated on the merits by a state court only if that adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* The state court's application of federal law must be not simply incorrect, but objectively unreasonable. *Williams v. Taylor*, 529 U.S. 362, 409-10 (2000) (O'Connor, J., concurring).

Under 28 U.S.C. § 2254(e)(1), factual determinations of a state court are "presumed to be correct," and a petitioner bears the burden of rebutting the presumption by clear and convincing evidence. The presumption of correctness applies even where the state courts' factual determinations are based on less than a full evidentiary hearing — as here, where the court relied on affidavits. *See Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000). A petitioner must show that the state court's determination of the facts was "unreasonable," *see Early v. Packer*, 537 U.S. 3, 11 (2002), and "against the clear and convincing weight of the evidence." *Ward v. Sternes,* 334 F.3d 696, 704 (7th Cir. 2003).

Petitioner's non-defaulted claim is that his trial counsel failed to investigate evidence that petitioner's mother, Elizabeth Terrell, had committed the crime. Underlying this claim is petitioner's assertion that he confessed to the crime to protect her.

### a.    The *Strickland* test

*Strickland v. Washington*, 466 U.S. 668 (1984), established a two-pronged standard that a petitioner must satisfy to merit relief on an ineffective assistance of counsel claim.  First, "the defendant must show that counsel's representations fell below an objective standard of reasonableness."  *Id*. at 688.  This requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.

Second, a defendant must demonstrate that he was prejudiced by counsel's deficient performance, *id*., showing that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  Specifically, a petitioner must prove "that the deficient performance prejudiced the defense [such that it] deprive[d] the defendant of a fair trial, a trial whose result is reliable."  *Id*. at 687.  Because counsel is presumed effective, habeas corpus petitioners face a "heavy burden" in establishing a successful ineffective assistance of counsel challenge.  *Walker v. Litscher*, 421 F.3d 549, 558 (7th Cir. 2005).

In the context of a federal habeas petition governed by AEDPA, petitioner must do more than merely convince the federal court that the state court applied *Strickland* incorrectly.  He must demonstrate that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002); *Barrow v. Uchtman*, 398 F.3d 597, 606 (7th Cir. 2005).

### b.    The state court's *Strickland* ruling

Before the state courts, petitioner supported his ineffective assistance claim with eight affidavits from family members.  In affirming the dismissal of petitioner's postconviction petition without an evidentiary hearing, the appellate court considered each of the affidavits in turn.  First, the appellate court pointed out that two of the affiants, Eloise Chambers and Drew Terrell, Sr., averred that they had spoken to petitioner's counsel; therefore, they did not support an allegation of failure to investigate.  *See* Exh. N at 5.   Next, the court explained that four others (Teresa Terrell, Elsie Teauge, Madeline Terrell, and Napoleon Wells) stated that they were not asked to testify at petitioner's trial, but did not allege that trial counsel failed to interview them; therefore they also did not support a claim that counsel failed to investigate.  *See id.* at 6.  Earline Wadlington stated that counsel did not contact her, but did not allege that petitioner or Elizabeth told her that Elizabeth committed the murder; therefore the affidavit did not support a claim that counsel failed to adequately investigate witnesses who could testify to this

allegation.  *See id.* at 6-7.  Finally, although Lottie Banks's affidavit stated that she was never contacted by trial counsel and was not asked to testify about Elizabeth's committing the crime, this was rebutted by her testimony at petitioner's first sentencing hearing, at which Banks stated that she believed petitioner was covering for Elizabeth.  *See id.* at 7-8.

The appellate court summarized its holding as follows:

> [D]efendant raised one issue on appeal.  He argued that his trial counsel provided ineffective assistance by failing to investigate evidence that would have shown he confessed falsely.  None of the affidavits support this claim.  Accordingly, defendant is not entitled to an evidentiary hearing and we affirm the judgment of the circuit court.

*See id.* at 8.

### c.    Petitioner's *Strickland* claim is not meritorious.

#### i.    The state court reasonably held that counsel's performance was not deficient.

The Illinois Appellate Court did not cite *Strickland*, but did hold that petitioner had not made a substantial showing that his constitutional rights were violated on the ground that petitioner's affidavits failed to demonstrate that his trial counsel did not conduct an adequate investigation.  In other words, petitioner failed to demonstrate that his lawyer's performance in this regard was deficient. *See* Exh. N at 5.  This is a merits determination within the meaning of Section 2254.  *See Early*, 537 U.S. at 8 (state court not required to cite to United States Supreme Court cases, or even be aware of them, as long as its holding does not contradict Supreme Court precedent); *Daniels v. Knight*, 476 F.3d 426 434 (7th Cir.

2007) (same).  That merits determination was not an unreasonable determination of the facts or an unreasonable application of *Strickland*.

*Strickland* requires counsel to make "reasonable investigation" or to make a "reasonable decision that makes particular investigations unnecessary[.]" 466 U.S. at 491.  Counsel's decision not to investigate is evaluated "from the perspective at the time the decision was made to forgo the investigation." *Brown v. Sternes*, 304 F.3d 677, 692 (7th Cir. 2002).  Given the factual weaknesses of petitioner's claim, the appellate court did not unreasonably apply *Strickland* in finding that counsel's investigation was adequate.  The appellate court reviewed and correctly described each affidavit.  Chambers and Drew Terrell *had* spoken with petitioner's counsel, so he had investigated them.  Teresa Terrell, Elsie Teague, Madeline Terrell, and Napoleon Wells did not allege that counsel had failed to interview them; Wadlington did not allege that Elizabeth was the culprit.

Petitioner specifically alleges (in claim (e)) that the appellate court erroneously described the testimony of Lottie Banks.  Pet. at 9.  Banks's affidavit stated "I was never contacted by [petitioner's] trial [attorney].  I testified as a character witness at his re-sentencing hearing, but was not asked to testify about this information." Exh. J.  But, as the appellate court correctly determined, Banks testified at petitioner's original sentencing hearing on that very point, and was therefore obviously contacted by petitioner's counsel.  *See* Exh. N at 7-8; Exh. K ROP at 642-43 (Aug. 27, 1986); *Terrell I*, 547 N.E.2d at 150.  Thus, the appellate

court did not unreasonably determine the facts in holding that counsel had

adequately investigated because petitioner presented no evidence to the contrary.

*Compare* Exhs. J and N.  Accordingly, petitioner's claim (e) has no basis.

### ii. Petitioner was not prejudiced by any failure to investigate.

The appellate court did not reach *Strickland*'s prejudice prong, but the trial

court did.  Therefore, its determination is the pertinent one on the prejudice issue

under AEDPA.  *See Rizzo v. Smith*, 528 F.3d 501, 505 (7th Cir. 2008) (under

AEDPA, federal court may issue habeas writ only if last state court decision to

examine merits was contrary to or unreasonable application of Supreme Court

precedent or based on unreasonable determination of facts); *Carlson v. Jess*, 526

F.3d 1018, 1023 (7th Cir. 2008) (same).  The trial court held:

> . . . I can't conceive . . . a jury, or a court for that matter, . . . now
> accepting [a] diametrically opposed statement by [petitioner] which
> contradicts everything that was said at trial.  The fact that he was
> alone at the time that the injury occurred, the fact that how he found
> the baby, what caused the injury, the falling of the – I think it was a
> television set or some piece of stereo would cause the injury, which we
> all know could not have occurred as a result of any such thing
> happening.  The fact that his mother was not present at that time and
> now suggesting that his mother is the one who did it, there's no
> indication in any way, shape, or form, what would cause the mother to
> do such a thing if she were present.  So for all those reasons, I don't
> foresee there would be any hope at all of there being a different verdict
> if the evidence, which was presented on the PC, were to be presented
> to a trier of fact, and the State, of course, would be offsetting it by the
> testimony under oath, which he gave, which contradicts everything
> he's saying.  That's not saying it may not be true, it's just saying I
> don't know, . . . how that would have any bearing on changing the
> verdict that was rendered.
>
> For that reason, I would, therefore, respectfully grant the State's
> motion to dismiss the PC.

Exh. K ROP at TT3-4.

While the court did not use *Strickland*'s formulation of prejudice — a "reasonable probability" — the court's standard was not contrary to it. The trial court held that it could not "foresee there would be any hope at all of there being a different verdict" and questioned "how [the affidavits] would have any bearing on changing the verdict." *Id.* This standard is easier, not harder for a petitioner to meet than *Strickland*'s "reasonable probability" requirement. Accordingly, the court's holding was not contrary to *Strickland*. Nor was it an unreasonable application of *Strickland*.

The evidence overwhelmingly demonstrated petitioner's guilt. Petitioner had confessed to the crime, and medical evidence corroborated the confession. On the key question — whether petitioner was alone with the child when she suffered her injuries, or whether Elizabeth was there with him (or perhaps alone) — petitioner said he was alone in his transcribed confession, to the police at the hospital, and in his sworn testimony at trial, where he also confirmed that what he told the police at the hospital was true. Nothing could have changed this mountain of evidence, which included petitioner's own sworn trial testimony, on this key point. But there was more. Evidence of his attempts to cover up his crime — which included initially telling his mother and police that Laura had been injured by a falling stereo, and planting pieces of the stereo on the floor to support his story — demonstrated consciousness of guilt.

Thus, there is no reasonable probability that the testimony of petitioner's family members (although, notably, not Elizabeth Terrell, the supposed perpetrator, or the victim's mother, who purportedly told affiants that she knew petitioner was innocent) of their belief that petitioner was innocent would have changed the outcome. *See Galowski v. Murphy*, 891 F.2d 629, 637-38 (7th Cir. 1989) (counsel's failure to interview witnesses did not prejudice defendant where witnesses' testimony would not have helped his case). The trial court's holding on this point should not now be overturned.

Furthermore, the trial court's conclusion is also supported by the sheer implausibility of petitioner's allegations in light of the affidavits' timing and the affiants' bias. Petitioner was first sentenced to death for the crime in 1986; the affidavits are dated 1999 and 2000. *See* Exh. J. To believe the affidavits sufficiently to create reasonable doubt in petitioner's guilt, one would also have to believe that petitioner's relatives — including his own father — allowed him to linger under a sentence of death for over a decade before putting their suspicions about Elizabeth Terrell to paper. Additionally, the affidavits themselves are subject to credibility questions, since the affiants are relatives of petitioner and evince no great fondness for Elizabeth, describing her as an abusive "dope fiend." *See* Exh. J. The inexplicable time lapse and the bias of the affiants undercut their credibility, contributing to the conclusion that any failure to investigate this theory did not prejudice petitioner. *See House*, 547 U.S. at 537 (habeas court can consider "how the timing of the submission [of new evidence of innocence] and the likely credibility

of the affiants bear on the probable reliability of the evidence") (quoting *Schlup*, 518

U.S. at 332). Thus, the trial court's rejection of petitioner's *Strickland* claim was

reasonable because petitioner did not meet the prejudice prong of that standard.

## **CONCLUSION**

This Court should deny the Petition for Writ of Habeas Corpus. If this Court

finds that one or more of petitioner's claims not answered on the merits is not

procedurally defaulted, respondent requests that this Court grant respondent 30

days from the entry of its order to address those claims on the merits.

July 29, 2008                                    Respectfully submitted,


                                                 LISA MADIGAN
                                                 Attorney General of Illinois

                                    By:     s/Erica R. Seyburn
                                                 ERICA R. SEYBURN, Bar # 6287357
                                                 Assistant Attorney General
                                                 100 West Randolph Street, 12th Floor
                                                 Chicago, Illinois 60601-3218
                                                 PHONE: (312) 814-2139
                                                 FAX: (312) 814-2253
                                                 E-MAIL: eseyburn@atg.state.il.us

**CERTIFICATE OF SERVICE**

I certify that on July 29, 2008, I electronically filed respondent's **Answer** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system, and on the same date mailed a copy of that document by United States Postal Service to the following non-CM/ECF user:

> Drew Terrell, #N63220
> Pontiac Correctional Center
> 700 W Lincoln St.
> P.O. Box 99
> Pontiac, IL 61764.

> LISA MADIGAN
> Attorney General of Illinois

> By:   s/Erica R. Seyburn
> ERICA R. SEYBURN, Bar # 6287357
> Assistant Attorney General
> 100 West Randolph Street, 12th Floor
> Chicago, Illinois 60601-3218
> PHONE: (312) 814-2139
> FAX: (312) 814-2253
> E-MAIL: eseyburn@atg.state.il.us