IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**F I L E D**

AUG 1 8 2008 *MB*

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT.

United States of America ex rel., )
  DREW TERRELL, )
             Petitioner, )
                        )
                        )
                        )
    -vs- )         Case No. 08 C 2328
                        )
                        )         The Honorable
                        )         MATTHEW F. KENNELLY
                        )         Judge Presiding.
  EDDIE JONES, Warden, )
    Pontiac Correctional Center, )
                   Respondent. )
                        )

### TRAVERSE

    NOW COMES Petitioner Drew Terrell, pro se, and hereby traversing respondent

EDDIE JONES' July 29, 2008 "ANSWER" to the petition for writ of habeas corpus

filed in the above-caption cause.  In support thereof, petitioner states as foll-

ows:

    1.  **ANSWER:** Petitioner Drew Terrell - identified as prisoner number N63220 -

is in the custody of Joseph Mathy, acting warden of the Pontiac Correctional Center

in Pontiac, Illinois.

    **TRAVERSE:** Petitioner admits that the above answer is true and correct, as

a matter of personal knowledge.  However, petitioner does not waive his right to

object to respondent's non-compliance with Section 2249.

    2.  **ANSWER:** In 1986, after a bench trial in the Circuit Court of Cook County,

petitioner was convicted of the murder and aggravated sexual assault of 15-month-

old Laura Hampton, and was sentenced to death and a 60 year term of imprisonment,

respectively.  See People v. Terrell, 547 N.E.2d 145, 147-50 (Ill. 1989).

    **TRAVERSE:** Petitioner admits that the above answer is an accurate account

of the procedural history in the above cited case, as a matter of information and

belief.

3. **ANSWER:** As summarized by the Illinois Supreme Court on direct review, evidence at trial established that Laura and her mother were sharing an apartment with petitioner and his mother, Elizabeth Terrell, when Laura was killed. See id. at 148. In his transcribed confession, petitioner stated that Elizabeth left petitioner alone with Laura on the day of the murder, while Elizabeth went to a currency exchange. See id. at 148. Petitioner called Laura's mother at her workplace and told her that Laura had been injured when she pulled a stereo down on herself. See id. At the hospital, petitioner told police the same story, in cluding that he was alone with the victim at the time; however, a physician informed police that Laura had a laceration extending from her vagina to her anus, not consistent with petitioner's version of events. See id.

**TRAVERSE:** Petitioner admits that the above answer is an accurate account of the procedural history in the case cited above in paragraph 2, as a matter of information and belief.

4. **ANSWER:** Questioning of petitioner by police continued at the police station for about 10 minutes. Id. There, petitioner stated that he was alone with Laura in the apartment when he heard a noise as if something had fallen. Id. Petitioner stated that he discovered Laura lying on the floor, with a bruise on her face and stereo components on her leg and above her head. Id. Thereafter, petitioner gave a transcribed statement in the presence of an Assistant State's Attorney that petitioner also read and signed, describing a different series of events. Petitioner stated that he was left alone with the child while his mother went to a currency exchange. Id. He brought Laura to his bed, and then struck the child on the back, face, and stomach several times because she kept crying. See id He also inserted a Q-tip and his finger into Laura's vagina "up to the bone" because he was "looking for a pain response." Id. at 149. Laura "hollered for a few minutes, then stopped hollering."' Id. He

stopped only when Elizabeth came home; petitioner told her that Laura had been injured when a stereo fell on her. To support his story, he put pieces of a stereo on the floor. See id.

**TRAVERSE:** Petitioner admits that the above answer is an accurate account of the procedural history in the above cited case, as a matter of information and belief.

5. **ANSWER:** At trial, petitioner related a third story; once again, he said he was left alone with Laura while his mother went to a currency exchange. Id. He also testified that he had left 15-month-old Laura by herself in the apartment for approximately 40 minutes, and when he returned, it appeared as though a stereo had fallen on her, although he also testified that he heard the stereo fall after he returned to the apartment. See Id. During that 40 minutes, petitioner testified, he was with "associates" whose names he could not recall. See Id. He conceded, however, that the words of his confession were his own, he was not told what to say in his confession, and he was not beaten by police into confessing. See id. Furthermore, petitioner testified that the statements he made to police at the hospital were true. See id.

**TRAVERSE:** Petitioner admits that the above answer is an accurate account of the procedural history in the above cited case in paragrph 2, as a matter of information and belief.

6. **ANSWER:** Postmortem examination revealed that Laura had suffered collapsed lungs, blood in her peritoneal and pleural cavities, contusions of her heart, lacerations of her liver, tearing of her mesentary, blood on her kidneys and pelvis, and lacerations of her vagina and rectum. See id. The medical examiner testified that these last injuries were consistent with a finger or Q-tip being inserted into her vagina. Id.

**TRAVERSE:** Petitioner admits that the above answer is an accurate account

the procedural history of the case cited above in paragraph 2, as a matter of in-

formation and belief.    However, petitioner expressly preserve his objections to

the respondent extensively detailing extensive facts unnecessary to an understand-

ing of the instant habeas proceedings in an effort to paint Mr. Terrell as a deceit-

ful who attempts to "cover up" his crimes, despite the fact that no concealment of

a homicide charges were ever preferred.  See Answer at page 19, par. 2; page 2, par.

3-4; page 3, par. 4-6; page 4, par. 6.  The respondent's strategy in citing abundant

facts that are irrelevant to an understanding of the case is for the obvious reason

to create a likelihood to bias the reader against Mr. Terrell.  Moreover, this case

has been extensively summarized by the reviewing Court in Illinois.  Accordingly,

Mr. Terrell ask this Court to sua sponte strike immaterial matters from all the plead-

ing filed within this cause when adjudicating.

   7.  **ANSWER**:  On direct appeal to the Illinois Supreme Court, petitioner raised

no issues advanced in this habeas petition.  (Cites to exhibit omitted).  The Illinois

Supreme Court affirmed the convictions, but vacated the sentences based on the trial

court's improper consideration of victim impact evidence, and remanded for resentenc-

ing.  (Case cite omitted).

   **TRAVERSE**: Petitioner admit that the above answer is true and correct, as a

matter of information and belief.

   8.  **ANSWER**: On remand, a jury again sentenced petitioner to death. (Case cite

omitted).  Petitioner appealed, but did not raise any issues asserted in this petit-

ion.  (Case cite omitted).

   **TRAVERSE**: Petitioner admit that the above answer is true and correct, as a

matter of information and belief.

   9.  **ANSWER**: Meanwhile, on May 9, 1997, petitioner filed a pro se petition for

postconviction relief, pursuant to 725 ILCS 5/122-1, which was replaced a counseled

amended postconviction petition filed April 10, 2003.  (Cites omitted)  The amended

petition raised two claims repeated in the instant petition:

    (a)   trial counsel was ineffective for failing to argue that petitioner had falsely confessed to the crime and that Elizabeth Terrell was in fact the culprit; and

    (b)   petitioner was actually innocent of the crime, based on newly-discovered evidence that Elizabeth committed the crime.

(Cite omitted).  In support of these claims, petitioner submitted affidavits from eight family members:

    (a)   Eloise Chambers, a second cousin;

    (b)   Drew Terrell, Sr., petitioner's father;

    (c)   Theresa Terrell, petitioner's stepmother;

    (d)   Elsie Teague, petitioner's great-aunt;

    (e)   Madeline Terrell, petitioner's grandmother;

    (f)   Lottie Banks, a cousin of petitioner's father;

    (g)   Napolean Wells, petitioner's uncle; and

    (h)   Earline Wadlington, petitioner's second cousin.

These affidavits purported to describe petitioner's relationship with Elizabeth Terrell, and the affiants' belief that Elizabeth was the true culprit and that petitioner confessed to the crime to protect her. (Cite omitted).

    **TRAVERSE:** Petitioner admits (a) thru (h) above are true and correct, as a matter of personal knowledge.  However, petitioner partially disagrees with the narrow description of the aforementioned affidavits creating an overall impression that the "affiants' belief that Elizabeth [i.e., someone other than the petitioner] was the true culprit and that petitioner confessed to the crime to protect her" was only based on their personal observations of petitioner's relationship with Elizabeth Terrell, when in fact Napolean Wells, by and through, his affidavit specifically testify that Elizabeth Terrell confessed to him oppose to some plausible suspicions arising from an assumably strange relationship, in particular, where Wells attested to the

fact that Elizabeth told him that "she told Drew to confess to the crime to cover for her because he would get less time than her and be better able to handle the prison sentence..." In a supplemental affidavit, Wells further elaborated on the details of Elizabeth Terrell telling him that she had told Drew to confess to the crime to cover up for her.

10.  **ANSWER:** On June 29, 2004, the state trial court dismissed the petition upon motion from the State, reasoning:

> "...I can't conceive...a jury, or a court for that matter...now accepting [a] diametrically opposed statement by [petitioner] which contradicts every- thing that was said at trial. The fact that he was alone at the time that the injury occurred, the fact that how he found the baby, what caused the in- jury, the falling of the— I think it was a television set or some piece of stereo would cause the injury, which we all know could not have occurred as a result of any such thing happening. The fact that his mother was not present at the time and now suggesting that his mother is the one who did it, there's no indication in any way, shape, or form, what would cause the mother to do such a thing if she were present. So for all those reasons, I don't foresee there would be any hope at all of there being a different verdict if the evi- dence, which was presented on the PC, were to be presented to a trier of fact, and the State, of course, would be offsetting it by the testimony under oath, which he gave, which contradicts everything he's saying. That's not saying it may not be true, it's just saying I don't know,...how that would have any bearing on changing the verdict that was rendered.
>
> For that reason, I would, therefore, respectfully grant the State's motion to dismiss the PC.

(Cite omitted).

**TRAVERSE:** Petitioner admits that the above redacted statement is an accura- te account of the state court record, as a matter of information and belief.

11.  **ANSWER:** Petitioner appealed to the appellate court, arguing only that the trial court erred in dismissing his claim that his trial attorney was ineffective for failing to investigate evidence that petitioner had falsely confessed to protect his mother, without an evidentiary hearing.  (Cite omitted).  The Illinois Appellate

Court, First District, affirmed the judgment of dismissal, holding that petitioner's affidavits did not support his contention that trial counsel failed to conduct an adequate investigation. (Cite omitted).

     **TRAVERSE:** Petitioner admits that the above statement is an accurate account of the issues raised in his brief on appeal, but asserts that since his petition was based on matter outside of the record and summarily dismissed, the record on appeal was not fully developed to support his claims other than the propriety of the summary dismissal itself, despite the diligence petitioner exercised in attempting to procure an evidentiary hearing to develop live testimony on his several affiants including a clinical – psychologist.

    12. **ANSWER:** Petitioner filed a petition for leave to appeal (PLA) in the Illinois Supreme Court, argung that the appellate court erred in (1) affirming the dismissal of his claim of ineffective assistance for failure to investigate evidence without an evidentiary hearing, and (2) applying the wrong standard in evaluating his strickland claim. (Cite omitted).

     **TRAVERSE:** Petitioner lacks sufficient information to admit or deny, due to his personal record being damaged, as a matter of personal knowledge.

    13. **ANSWER:** On July 30, 2007, petitioner filed the instant petition for writ of habeas corpus, alleging five claims:

    (a) the state trial court erred in dismissing his postconviction petition without a hearing, where he raised claims of actual innocence and in-effective assistance of counsel;

    (b) his trial counsel was ineffective for failing to investigate and present evidence that Elizabeth Terrell had actually committed the crime;

    (c) the state appellate court misapplied Illinois' standard of review in affirm-ing the dismissal of the postconviction petition;

    (d) his trial counsel was ineffective for failing to present evidence that petitioner's confession was false and that he was actually innocent; and

(e)  the state appellate court misstated facts regarding the testimony of

Lotti Banks during trial.

(Cite omitted).

**TRAVERSE:** Petitioner disagrees with the summation of his claim above in

(a) thru (e), and further stand on his petition.

14. **ANSWER:** Petitioner has exhausted his state court remedies with respect

to the claims raised in the instant petition.  (Cite omitted).

**TRAVERSE:** Petitioner asserts that he did not receive any copy of the ex-

hibits upon which the respondent expressly relied on in the answer filed herein.

Accordingly, petitioner again requests a copy of the aforesaid exhibits and for

the respondent to fully comply with this Court's order mandating the same.

### TRAVERSE TO RESPONDENT'S ARGUMENT

15. In answering petitioner's claims under subparagraph (a) and (c) of paragraph

12 of his petition for habeas corpus relief, the respondent misconstrues such claims

as the "state court erred in not granting him an evidentiary hearing, and misapplied

its own standard of review" which are noncognizable as challenges to state law, when

in fact, petitioner was making an offer of proof by clear and convincing evidence in

order to rebut the presumption of correctness that is afforded to those factual find-

ings by a state court made in the course of resolving a federal claim.(Id. A. 1. of

respondent's answer), specifically, where the petitioner pointed out where the fact

finding process at the state trial court level was defective relating to the trial

court resolution of a factual question such as credibility at the pleading stage, and

where the fact finding process at the state court appellate level was defective where

the appellate court omitted making a finding that petitioner's claims contained in

his petition for postconviction relief were before the court after expressly applying

a de novo standard of review to the summary dismissal of his petition.  See 28 U.S.C.

section 2254(e)(1); Jenkins v. Nelson, 157 F.3d 485, 491 (7th Cir. 1998).

16.  Respondent asserts that petitioner's allegations that his trial counsel was ineffective for failing to present evidence that petitioner falsely confessed and his noncognizable claim that he was actually innocent (claim(d) and a portion of claim (b)) are procedurally defaulted because they were not raised in one complete round of state court review.  (B.(1) of Respondent's answer) Respondent acknowledges that the petitioner's postconviction petition contained his claims of ineffective assistance for failure to present evidence and actual innocence.  Petitioner acknowledges that by not expressly presenting his actual innocence claim squarely before the Illinois Supreme Court it is technically defaulted and should be stricken as a free-standing actual innocence claim.  However, petitioner asserts that by virtue of the fact that his ineffective assistance of counsel claim involves counsel failure to present exonerative evidence that also had probative value that necessarily embraces innocence-his actual innocence claim was not free-standing and could be properly be considered in a federal habeas corpus proceedings in the context of an ineffective assistance of counsel claim and such claim should be construed as a permissible reformulation of his ineffective assistance of counsel claim for failure to investigate based on the same facts that was presented in the state court's proceedings.  See Boyko v. Parke, 259 F.3d 781, 789 (7th Cir. 2001)(exhaustion requirement satisfied because petitioner reformulated challenge of ineffective assistance of counsel, though this claim did not substantially change state claim). In the instant case, respondent acknowledges that petitioner's postconviction petition contains the claims now claimed to be defaulted and petitioner further assert that since the appellate court expressly applied a de novo standard of review to the summary dismissal of his petition, thereby confining its review within the four corners of the petition for postconviction relief to determine if the claims as set forth in said petition was sufficient to survive summary dismissal constructively relaxing the strict brief requirements although the Illinois Appellate noted such claim was not fully brief as

set forth in the petition for postconviction relief. Moreover, since the petit-
ioner's petition was summarily dismissed, petitioner could not fully develop the
record for a fair review of his claims, despite his exercise of due diligence to
procure an evidentiary hearing, and therefore he should be allowed to proceed on
his claims under the pre-Antiterrorism and Effective Death Penalty Act. See Davis
v. Lambert, 388 F.3d 1052 (C.A. 7th (Ill.), 2004)(holding in relevant part that
given inmate's failure to secure hearing on ineffective assistance claim in state
postconviction proceedings, pre-Antiterrorism and Effective Death Penalty Act stan-
dards thus applied). Alternatively, as alleges in the petitioner's memorandum filed
in support of his petition for habeas corpus relief the fundamental miscarriage of
justice exception could be applied to his claim of actual innocence underlying his
ineffective assistance of counsel claim where in light of the newly-discovered evid-
ence that it is more likely than not that no reasonable juror would have convicted,
in particular, where there is no physical evidence linking him to the crime such as
D.N.A. or any other, and where the prosecution's case was primarily center around
the petitioner's various inconsistent statements, however, in light of the newly dis-
covered evidence, namely, the expert testimony such inconsistency provides a negative
or indirect proof to the petitioner's allegation of his confession being false, speci-
fically, where Dr. Bruce Frunmkin concluded that petitioner has a Full Scale I.Q. of
80, placing him in the Borderline to low Average range of intellectual functioning
and that petitioner's past history, behavior observations and results of a test of
suggestibility are consistent with a highly suggestible individual who was so suscep-
tible to giving erroneous accounts of events to police during interrogation that "
a reasonable probability exists to challenge the veracity of his confession," (See
Affidavit of I. Bruce Frumkin, Ph.D., ABPP, attached as Exhibit 12 of his state petit-
ion for postconviction relief). Moreover, no resonable juror would have convicted
in light of the newly-discovered evidence, namely, the affidavit of Napolean Wells

attesting to the fact that Elizabeth Terrell confessed to him that she committed the
crime for which petitioner was convicted of and her part in directly influencing
the petitioner to confess to cover for her because his youthfulness would be a favor-
able factor in considering any potential punishment.  See Affidavit of Napolean Wells,
April 19, 2000, attached as Exhibit 9 of his state petition for postconviction relief;
also see Additional Supplemental Affidavit of Napolean Wells, May 5, 2000, attached as
Exhibit 10 of his state petition for postconviction relief.  Further, no reasonable
juror would have convicted in light of the newly discovered evidence that was presented
in the state court's postconviction proceedings, namely, the many corroborating affida-
vits.   Further, it is a miscarriage of justice petitioner has not gotten his day in
court, despite the fact that several attorneys have aggressively attempted to develop
record with live testimony, but to no avail, in particular, where at resentencing be-
fore the same postconviction judge his attorneys were prohibited from presenting this
evidence at sentencing on the basis that he was barred from relitigating his innocence
at sentencing, and such evidence should have been raised at trial, so his attorneys
then argued before the Illinois Supreme Court and the United States Supreme Court that
such evidence should have been considered where there was lingering doubt as to the
petitioner's guilt, however, when the petitioner mounted a collateral attack assert-
ing an ineffective assistance of counsel claim based on counsel's failure to present
evidence of the petitioner's innocence and that his confession was false during his
trial, his postconviction judge concluded such evidence would not have "any bearing
on changing the verdict that was rendered" (Respondent's answer at page 18), despite
the fact that he had previously concluded that such evidence should have been raised
at trial and could not be raised at resentencing because it disputes the guilty find-
ing, and despite the extensive resulting litigation recognizing such evidence creates
a dispute between the factual determination of guilt and innocence.   Therefore, petit-
ioner obtain relief on his ineffective assistance of counsel claim, and respondent

should be precluded from later addressing the merits where affirmative defenses claimed.

17.  Further in answering the non-defaulted portion of petitioner's claim, respondent responded to the merit of petitioner's claim that trial counsel was ineffective for failure to investigate evidence that petitioner's mother, Elizabeth Terrell had committed the crime ((a) and (c)).  However, in addressing the evidentiary basis of the petitioner's claim , the respondent mischaracterizes such basis, despite the petitioner previous offer of clear and convincing evidence pointing out that the appellate court had made the same mischaracterization of the affidavit of Lotti Banks in their recital during the adjudication of his appeal relating a material fact that was central to the resolution of the issues raised on appeal, and thereby rendering those factual findings made by the appellate court in the course of resolving the federal question before them —as— unreasonable as a result of a defective process, in particular, where the appellate court discounted Lotti Banks' affidavit as being refuted by the record at sentencing showing her testifying in an almost similiar fashion which was construed as a contradiction of her affidavit stating she was never asked to testify at trial, but the appellate omitted the "at trial" portion of her affidavit which materially altered the proper context of such affidavit further compounded by the fact such affidavit was narrowly interpreted without any aid of a developed record containing live testimony.

18.  Petitioner is very confused at what exact position the respondent is taking in respects to identifying a recognized legal standard the state trial court applied, in particular, where the respondent states that the "appellate court did not reach Strickland's prejudice prong, but the trial court did * * *.  The trial court * * * did not use Strickland's formulation of prejudice - a "reasonable probability" * * This standard is easier, not harder for a petitioner to meet than Strickland's reasonable probability" requirement." (Respondent's answer at page 18-19)  To date, the two prong test established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,

80 L.Ed.2d 674 (1984) is clearly established federal law as defined by the United

States Supreme as a governing criteria and standard limiting the nature and extent

of an ineffective assistance of counsel inquiry and as a binding interpretation of

the Sixth Amendment of the United States Constitution, and this framework followed

by our home circuit court of appeals in Raygoza v. Hulick, 474 F.3d 958 (C.A. 7th

(Ill.) 2007) and clearly incorporated under state law in People v. Albenese, 104

Ill.2d 504 (1984).  The respondent reasoning that just because the state trial court's

"standard is easier" it is not contrary to clearly established federal law as defined

by the United States Supreme Court.  This reasoning is inherent flawed and by implica-

tions is contrary to the doctrine of stare decisis; the preemptive power of the

supremacy clause of the United States Constitution; the Fourteenth Amendment as appli-

ed to the states; and even many state law principles, in short, Strickland two prong

test is the test to be applied to claims of ineffective assistance of counsel and no

other, regardless of the effects on the burden on the parties.  Therefore, the respon-

dent has conceded that the state trial court in fact did not apply Strickland, but

present a legal question of Can a state trial court depart from clearly established

federal if it lessen the burden of a party(?)

    19.  Further, respondent attempts to encourage this Court to engage in resolv-

ing factual dispute at the pleading stage, in particular, where the respondent attempt

to supplement the record with the "inexplicable time lapse and the bias of the affi-

aint" as to undercut their credibility (Respondent's answer page 20), but respondent's

conclusion of the affiants' presumed bias is based on their personal observation the

petitioner's mother being an "abusive "dope fiend" which is an objective assessment

and as such it is insufficient to support any conclusion of bias, in fact, she is

loved by all of the affiants based on information and belief.  The state trial court

never remotely said anything in relation to a time lapse in the context the respond-

ent is encouraging.  In conclusion, petitioner asserts that an evidentiary hearing

is required where the respondent has acknowledged that the state trial court used the wrong standard in summarily dismissing petitioner's ineffective assistance of counsel claim.  See Davis v. Lambert, 388 F.3d 1052 (C.A. 7th (Ill.) 2004) (holding in relevant part that "evidentiary hearing was required, given state postconviction court's perfunctory rejection of claim using wrong prejudice standard, and inmate's plausible contention that witnesses would have bolstered his self-defense claim").

## CONCLUSION

Petition prays that this Honorable Court grant the instant petition for the issuance of a writ of habeas corpus, or evidentiary hearing before this Court, and prclude the respondent from arguing the merits on all those claim upon which an affirmative defense was invoked.

AUGUST 11, 2008.                    Prepared by: /s/

Petitioner DREW TERRELL N63220

PONTIAC CORRECTIONAL CENTER,
700 W. LINCOLN AVE./ P.O. BOX 99,
PONTIAC, IL. 61764.

IN THE

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

UNITED STATES OF
AMERICA ex rel.,
DREW TERRELL                    )
Plaintiff/Petitioner            )
                                )
        Vs.                     )        No 08 C 2328
EDDIE JONES, WARDEN             )
PONTIAC CORRECTIONAL CENTER     )        THE HONORABLE
Defendant/Respondent            )        MATTHEW F. KENNELLY
                                )        JUDGE PRESIDING

ASSISTANT            PROOF/CERTIFICATE OF SERVICE
ATTORNEY GENERAL                THE CLERK OF THE
TO ERICA R. SEYBURN     TO: NORTHERN DISTRICT
100 W. RANDOLPH STREET      COURT OF ILLINOIS
CHICAGO, IL. 60601.         219 S. DEARBORN STREET
    12TH FLOOR              CHICAGO, IL. 60604.

    PLEASE TAKE NOTICE that on AUGUST    11    , 200 8 , I placed
the documents listed below in the institutional mail at PONTIAC CORRECTIONAL
Correctional Center, properly addressed to the parties listed above for mailing through
the United States Postal Service

## TRAVERSE

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109 I declare, under penalty of
perjury that I am a named party in the above action, that I have read the above
documents, and that the information contained therein is true and correct to the best of
my knowledge and belief.

DATED AUG. 11, 2008.         /s/ Drew Terrell
                             Name: Drew Terrell
                             IDOC No. N-63220
                             PONTIAC        Correctional Ctr.
                             POB   99.
                                   PONTIAC          , IL 61764.

# AFFIDAVIT OF AFFIRMATION

I, DREW TERRELL , affiant, do hereby declare and affirm under penalty of perjury as defined in 735 ILCS5/1-109, 28 USC 1746 or 18 USC 1621 that everything contained herein is true and accurate to the best of my knowledge and belief. I further declare and affirm that the contents of the foregoing document(s) is/are known to me and is/are accurate to the best of my knowledge and belief. Finally, I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith

Signed on this **11** day of **AUGUST** , 200 **8**

_Drew Terrell_
Affiant

#N-63220.
PONTIAC CORRECTIONAL CENTER
700 WEST LINCOLN STREET
P.O. BOX 99.
PONTIAC, ILLINOIS 61764.