# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| United States of America *ex rel.* DREW TERRELL, | ) ) ) |
| Petitioner, | ) ) |
| vs. | ) Case No. 08 C 2328 ) |
| JOSEPH MATHY, Warden, Pontiac Correctional Center, | ) ) ) |
| Respondent. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In 1986, following a bench trial, an Illinois judge convicted Drew Terrell of the felony murder and aggravated criminal sexual assault of Laura Hampton and sentenced Terrell to death. The Illinois Supreme Court ultimately affirmed Terrell's conviction and sentence. Terrell filed a state post-conviction petition in 1997. In 2003, Illinois governor George Ryan commuted Terrell's sentence to life imprisonment without parole. A state trial judge thereafter denied Terrell's post-conviction petition, and the Illinois Appellate Court affirmed that decision on appeal.

Terrell has petitioned the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his original petition, Terrell alleged that his constitutional rights were violated by his trial counsel's inadequate investigation regarding evidence that another person committed the crime; trial counsel's failure to present evidence of Terrell's innocence; the state trial court's refusal to hold an evidentiary hearing on his post-conviction

petition; the state appellate court's affirmance of the dismissal of the post-conviction petition; and that court's allegedly erroneous statement of the evidence. The Court later gave Terrell leave to supplement his petition with additional claims.

For the reasons stated below, the Court denies Terrell's petition.[1]

## Background

The evidence presented at Terrell's trial showed that he and his mother, Elizabeth, shared an apartment with Markeeter Hampton[2] and her fifteen-month-old daughter, Laura Hampton. On August 27, 1985, Markeeter went to work, leaving Laura in Elizabeth's care. Markeeter testified that Terrell later called her and told her that her daughter was in the hospital and in a coma because she had pulled a stereo down on herself. Laura died later that afternoon. *People v. Terrell*, 132 Ill. 2d 178, 186, 547 NE.2d 145, 148 (1989).

Two police officers testified that they were called to the hospital to investigate a possible child abuse case. They questioned Terrell, who, they testified, said he was alone with Laura and believed she had been injured by falling stereo equipment. One of the officers, a detective, testified that he observed Laura's injuries and that a doctor told him that one of those injuries, a laceration extending from her vagina to her anus,

---

[1] The Court grants Terrell's "motion for special order," in which he asks the Court to take notice of a motion to appoint counsel he filed in the Central District of Illinois, where he originally filed his case. The Court denies, however, Terrell's motion for appointment of counsel. The issues in the case are not so difficult or complicated that appointment of counsel is necessary for fair presentation of Terrell's claims.

[2] Several spellings of Ms. Hampton's first name appear in the record. The Court adopts the spelling used by the Illinois Supreme Court. *People v. Terrell*, 132 Ill. 2d 178, 186, 547 NE.2d 145, 148 (1989).

was not consistent with the story Terrell had given. The officers then took Terrell in for questioning. *Id.* at 187, 547 N.E.2d at 148.

Another detective testified that at the police station, Terrell initially gave a story similar to the one he had given to the officers at the hospital. A little after four hours later, after questioning by a prosecutor in the presence of two detectives, Terrell gave another statement. A court reporter was summoned, and Terrell gave a statement in the court reporter's presence. The statement was reduced to writing, and Terrell signed it. In that statement, which was read into evidence at trial, Terrell said he was left alone with Laura when his mother left to cash a check. He stated that after Laura woke up crying, he struck her several times on her back, face, and stomach. Terrell said he put stereo equipment on the floor at that point. After changing her diaper, Terrell stated, he inserted a Q-tip and then his finger into Laura's vagina and "handl[ed] her" for a few minutes, "looking for a pain response." The baby "hollered for a few minutes, then stopped hollering." This continued for a period, until Terrell heard Elizabeth knock at the door. He stated that he told his mother that Laura had accidentally pulled the stereo down on herself. *Id.* at 188-89, 547 N.E.2d at 148-49.

The Cook County medical examiner described Laura's injuries, including vaginal and rectal lacerations, and stated that they had preceded her death. He stated that the death was a homicide and that the genital lacerations were consistent with a finger or Q-tip being inserted into her vagina. *Id.* at 189, 547 N.E.2d at 149.

Terrell testified in his own defense at trial. He stated that on the morning in question, he left the apartment after his mother left. He spoke for about forty minutes with "associates" whose names he could not recall and then returned to the apartment,

where, he said, it appeared that a stereo had fallen on Laura. Later, Terrell testified that he heard the stereo fall after returning to the apartment. Terrell denied portions of his transcribed statement to the police but conceded that the words in the statement were his and that the police had not beaten him or told him what to say. He stated, however, that he had given the statement because a police officer confronted him and asked if he knew what happened to people who do not cooperate with the police. He testified that his earlier statements to the officers – the statements he made while at the hospital – were true. *Id.* at 189-90, 547 N.E.2d at 149.

On direct appeal, Terrell argued that the trial court had erred in denying his motion to suppress his confession, challenged the sufficiency of the evidence, challenged the constitutionality of the pertinent criminal sexual assault statutes, and raised various issues concerning sentencing. The Illinois Supreme Court rejected all of Terrell's arguments except for his contention that the trial judge should not have imposed consecutive sentences for murder and aggravated criminal sexual assault.

Following remand, Terrell was again sentenced to death. On appeal, he raised a variety of sentencing-related issues. The Illinois Supreme Court affirmed the death sentence. *People v. Terrell*, 185 Ill. 2d 467, 708 N.E.2d 309 (1998).

In 1997, while his case was pending before the Illinois Supreme Court on appeal, Terrell filed a post-conviction petition in state court. In that petition, he contended that his trial counsel was ineffective for failing to present the theory that Terrell had falsely confessed to protect his mother and for failing to conduct an adequate investigation of potential witnesses to support that theory. In support of his petition, Terrell submitted affidavits from eight relatives. They stated that Elizabeth had mistreated Terrell and

4

influenced him to misbehave and commit crimes. Certain of the affiants stated that Terrell had told them Elizabeth killed Laura and told Terrell to confess because he would not be punished as severely. One affiant, Elizabeth's brother Napoleon Wells, stated that Elizabeth told him she had killed Laura and later coerced Terrell into confessing. Another affiant, Eloise Chambers, stated that she saw Markeeter Hampton visiting Terrell sometime before his resentencing in 1995.

In June 2004, a state trial judge dismissed Terrell's post-conviction petition. Terrell appealed, arguing that the trial judge had erred in dismissing his claim without holding an evidentiary hearing. The Illinois Appellate Court affirmed in July 2006. *People v. Terrell*, No. 1-04-2266 (Ill. App. July 26, 2006). The court ruled that Terrell's affidavits did not support his contention that his trial counsel had failed to conduct an adequate investigation. Specifically, the court stated that because two of the affiants had stated they had talked to trial counsel, their affidavits did not support a claim of failure to investigate. *Id.*, slip op. at 5. The court stated that four of the affiants who said they were not asked to testify had not claimed that trial counsel had not interviewed them. *Id.* at 6. The seventh affiant, the court stated, said only that Elizabeth was a negative influence on defendant and acted violently; the affiant provided no information that either Terrell or Elizabeth said Elizabeth had committed the crime. This witness, the court stated, would not have supported a claim of failure to investigate Terrell's allegedly false confession. *Id.* at 7. The final affiant, Lottie Banks, stated that Terrell told her during the trial that Elizabeth committed the crime and that she was never contacted by trial counsel and was not asked to testify about her information at Terrell's sentencing hearing even though she appeared as a character

witness on his behalf. The court stated that this witness's claim was undermined by the transcript of Terrell's original sentencing, which reflected that Ms. Banks testified that Terrell was "covering up for his mother." *Id.* at 7-8. In sum, the appellate court concluded, Terrell's affidavits did not support his claim, and he was not entitled to an evidentiary hearing. *Id.* at 8.

Terrell then filed a petition for leave to appeal in the Illinois Supreme Court. He argued that the appellate court had erred in affirming the dismissal of his post-conviction petition and that the court had applied the wrong standard in evaluating his claim of ineffective assistance of counsel. The Illinois Supreme Court denied the petition.

## Discussion

**1.     Non-cognizable claims**

The Court agrees with respondent that certain of Terrell's claims are non-cognizable on federal habeas corpus review. A federal court may not, on federal habeas review, reexamine a state court's determination of an issue of state law. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The propriety of the state trial court's decision to dismiss Terrell's post-conviction petition without holding an evidentiary hearing and the appellate court's determination of the appropriate standard of review are both state law issues. Accordingly, neither decision is properly reviewable in the present proceeding.

## 2. Ineffective assistance-related claims

A federal court reviewing a habeas corpus petition may not consider the merits of a claim that the petitioner procedurally defaulted, unless an exception applies. Respondent argues that Terrell procedurally defaulted his claim that his trial counsel was ineffective for failing to present evidence that Terrell falsely confessed. According to respondent, Terrell did not raise this issue on appeal from the dismissal of his state post-conviction petition.

The Court disagrees. Though the thrust of Terrell's post-conviction appeal was that the trial court should have held an evidentiary hearing, he unquestionably argued the sufficiency of his evidence of ineffective assistance of counsel. *See* Resp. Ex. L at 15-18. And the state appellate court, though it ultimately concluded that Terrell was not entitled to an evidentiary hearing, quite clearly evaluated the merits of Terrell's claims. Specifically, the court, after reviewing the details of the affidavits, concluded that Terrell had failed to show that his trial counsel had not adequately investigated the possibility that Elizabeth had committed the crime. *Terrell*, slip op. at 5-8.

The Court therefore reviews Terrell's ineffective assistance-related claims on the merits. To prevail on these claims, Terrell must show that trial counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that but for counsel's unprofessional errors, the result of the trial have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). In other words, the test involves a "performance" standard and a "prejudice" standard.

7

Because the state appellate court reviewed Terrell's claim on the merits, to prevail in this case, Terrell must do more than show that he would satisfy *Strickland* were his claim being analyzed afresh. Rather, Terrell must show that the state appellate court's decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court, or that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1) & (2).

Terrell contends that the appellate court unreasonably applied *Strickland*. He argues that trial counsel failed to interview the affiants, who he contends were readily available, and that no reasonable juror would have convicted him had the evidence reflected in the affidavits been introduced. Terrell also appears to contend that the state appellate court mischaracterized Lottie Banks' affidavit and thus unreasonably determined the facts.

The Court addresses the latter point first. The appellate court summarized the relevant portion of Ms. Banks' affidavit as follows: "I was never contacted by Drew, Jr.'s trial [sic]. I testified as a character witness at his re-sentencing hearing, but was not asked to testify about this information." *Terrell*, slip op. at 7. The court noted that Ms. Banks testified at Terrell's initial sentencing hearing, which took place immediately after the guilt phase of his trial. At the hearing, Ms. Banks testified that she "believe[d] he is right here covering up for his mother." *Terrell*, slip op. at 7-8; Resp. Ex. K at ROP 43. As the appellate court noted, the fact that Ms. Banks testified at the original sentencing hearing contradicted her assertion that she had never been contacted by trial counsel.

From this, the court concluded that Ms. Banks' affidavit did not support a claim of failure to investigate.

Terrell contends that the appellate court omitted the words "at trial" from the portion of Ms. Banks' affidavit that it quoted. Examination of the affidavit itself, however, reveals that the appellate court's quote was complete and accurate. *See* Resp. Ex. J at 101-04. In short, the Court did not unreasonably determine that Ms. Banks' affidavit did not support a claim that trial counsel had failed to conduct an adequate investigation.

The appellate court did not reach the issue of whether Terrell was prejudiced by trial counsel's conduct. Rather, it concluded that Terrell had failed to show that trial counsel had conducted an inadequate investigation to begin with. This Court cannot say that the appellate court's determination involved an unreasonable determination of the facts or an unreasonable application of *Strickland.* Before the state appellate court, Terrell framed his claim as one of failure to investigate. *See Terrell*, slip op. at 4; Resp. Ex. L at 2, 9. Assessment of the "performance" aspect of a claim of failure to investigate involves, as a threshold matter, whether trial counsel interviewed the witnesses in question. *See, e.g., Bruce v. United States*, 297 F.3d 592, 597-98 & n.2 (7th Cir. 2001). Thus it was not unreasonable for the appellate court to consider Terrell's claim by examining whether he had shown that counsel had not interviewed the witnesses. Nor did the appellate court unreasonably determine the facts when it found that Terrell had failed to make that showing. Specifically, based on the affidavits that Terrell submitted, the appellate court's determination that Terrell had failed to show that trial counsel had not spoken to six of the eight witnesses was not unreasonable; as

9

the appellate court noted, two of those witnesses said they had talked to trial counsel, and four did not say they had not done so. A seventh witness, Ms. Banks, had testified in open court at Terrell's sentencing.[3]

Although the state appellate court did not cite *Strickland*, that is not required. So long as the state court did not "appl[y] a rule that contradicts the governing law set forth in [the Supreme Court's cases]," the state court's decision cannot be overturned. *Early v. Packer*, 537 U.S. 3, 8 (2002). There is no basis to say that the appellate court applied the wrong rule of law or applied it in an unreasonable manner in Terrell's case.

For these reasons, the Court rejects the remaining claims in Terrell's original habeas corpus petition.

### 3.  Supplemental claims

In an order dated October 24, 2008, the Court gave Terrell permission to assert supplemental claims – in essence, to amend his habeas corpus petition. In opposing leave to amend, respondent argued that Terrell's new claims were time-barred. In the October 24 order, the Court determined that respondent's contention should be assessed after giving Terrell leave to amend.

Having considered the parties' arguments, the Court now concludes that Terrell's supplemental claims are, in fact, time-barred. The law imposes a one year limitations period – with certain exclusions – for filing a habeas corpus petition. 28 U.S.C. §

---

[3] As the state appellate court correctly noted, the eighth witness had nothing to say in her affidavit about Terrell's contention that his mother had committed the crime. This affidavit added nothing of significance to Terrell's claim, as the appellate court ruled. *Terrell*, slip op. at 7.

2244(d)(1 & 2). It is undisputed that Terrell added his new claims after that period had expired.

Each of Terrell's new claims concerns alleged constitutional errors during the investigation that led to his indictment or at his trial or sentencing hearing. None of them concerns ineffective assistance of counsel or the alleged guilt of Terrell's mother, Elizabeth. Federal Rule of Civil Procedure 15 governs amendments to habeas corpus petitions. *See Mayle v. Felix*, 545 U.S. 644, 655 (2005). Under Federal Rule of Civil Procedure 15(c)(2), an amendment to a pleading that is made after the limitations period has run relates back to the date the original pleading was filed only if the claims in the amendment arise from the same conduct, transaction, or occurrence in the original pleading. It is insufficient, in the habeas corpus context, that the new claims relate to the same underlying criminal trial as the original claims; rather, to relate back, the new claims must be tied to the same core of operative facts as the original claims. *Mayle*, 545 U.S. at 664 & n.7. Such is not the case here.

Because Terrell's new claims do not relate back to the date he filed his habeas corpus petition, they are time-barred unless there is a basis to equitably toll the statute of limitations. Terrell has offered no basis for equitable tolling. Terrell's contention that he lacked access to relevant records is insufficient; there is no question that Terrell was aware of his new claims – each of which he raised on direct appeal in state court – at the time he filed his habeas corpus petition. In any event, lack of access to trial transcripts or other parts of the state court record is not a proper basis for equitable tolling. *See Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002). Terrell also contends that he suffers from a form of mental incapacity, but he has not supported this

contention in a way that would entitle him to equitable tolling. Material that Terrell submitted in connection with his post-conviction petition, specifically a report from a psychologist, reflects that he is of low-average to borderline intelligence. That is not a basis to permit equitable tolling of the habeas corpus statute of limitations; there is no indication that it prevented Terrell from managing his affairs or understanding his rights. *See Lawrence v. Florida*, 421 F.3d 1221, 1226-27 (11th Cir. 2005) (petitioner's contention that he suffered from low I.Q. was insufficient to justify equitable tolling). *See also Miller v. Runyon*, 77 F.3d 189, 191-92 (7th Cir. 1996) ("[M]ental illness tolls a statute of limitations only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them.").

## Conclusion

The Court grants petitioner's "motion for special order" but denies his motion for appointment of counsel [docket nos. 32 & 33]. For the reasons stated above, the Court denies the petition for a writ of habeas corpus [docket no. 4]. The Court directs the Clerk to enter judgment in favor of respondent.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 21, 2009